# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued April 5, 2007           Decided July 31, 2007

No. 06-5085

MICHAEL SUSSMAN,
APPELLANT

v.

UNITED STATES MARSHALS SERVICE,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 03cv00610)

*Sean J. Hartigan*, pro hac vice, argued the cause for appellant. On the briefs was *Michael Sussman*, pro se.

*Alan Burch*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Jeffrey A. Taylor*, U.S. Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney. *Laurie Weinstein* and *Michael J. Ryan*, Assistant U.S. Attorneys, entered appearances.

Before: SENTELLE, TATEL and BROWN, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* BROWN.

BROWN, *Circuit Judge*:  Citing the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act of 1974, *id.* § 552a, Michael Sussman sought the release of various documents maintained by the United States Marshals Service ("Marshals Service" or "USMS").  Sussman also asserted fourteen claims for damages against the Marshals Service predicated on alleged violations of the Privacy Act.  The district court granted summary judgment to the Marshals Service on all these claims, and Sussman appealed.  For reasons detailed below, we now affirm in part, reverse in part, vacate in part, and remand for further proceedings.

I

On July 19, 2002, Michael Sussman wrote to the Department of Justice ("DOJ") requesting disclosure, pursuant to FOIA and the Privacy Act, of "[a]ny and all records relating to me, mention[ing] me, or otherwise pertain[ing] to me" that were held by any of nine listed agencies, including the Marshals Service. In response to Sussman's letter, the Marshals Service began an investigation.  Eventually it announced it had found only one document, a four-page "Notice of Invocation of Rights" Sussman had sent to a judge's home.  The Marshals Service disclosed this Notice to Sussman with one redaction, which Sussman has not challenged.

In an administrative appeal, Sussman argued the Marshals Service had performed an inadequate search.  As evidence, he cited a "Wanted Poster" it had issued for Keith Maydak, which listed "Michael Sussman" as an alias for Maydak.  Sussman further claimed the Marshals Service had investigated him, his businesses, and his associates, so that the Notice could not be the only material it maintained regarding him.

In March 2003 Sussman changed tactics and filed a complaint in the U.S. District Court for the District of Columbia. Sussman's amended complaint asserted sixteen causes of action. In Counts I and II, Sussman sought disclosure of additional USMS materials pursuant to FOIA, 5 U.S.C. § 552(a)(3), and the Privacy Act, *id.* § 552a(d)(1), (g)(1)(B), (g)(3)(A). In Count III, Sussman sought damages under the Privacy Act for the Marshals Service's alleged failure to keep an accurate accounting of disclosures it had made during its investigation of him. *See id.* § 552a(c)(1), (g)(1)(D), (g)(4). In Counts IV through XVI, Sussman sought damages under the Privacy Act for unlawful disclosures the Marshals Service allegedly made regarding him. *See id.* § 552a(b), (g)(1)(D), (g)(4).

In August 2003, Sussman moved for summary judgment as to Counts I and II. The Marshals Service in turn moved for summary judgment on all sixteen claims ("Def.'s 1st S.J. Memo") but only provided arguments for Counts I and IV through XVI.

On August 3, 2004, the district court granted summary judgment to the Marshals Service on Counts IV through XVI. But the court deemed the Marshals Service's search inadequate and granted summary judgment to Sussman on Count I, ordering the Marshals Service to "file a status report regarding the results of a further search to comply with plaintiff's FOIA request." The court's order left unclear the status of Counts II and III, the merits of which it did not discuss.

In response to the court's order, the Marshals Service renewed its search efforts, now taking into account Sussman's connections to Maydak, as revealed during his administrative appeal. This second search yielded 813 additional pages of documents relating to Sussman. The Marshals Service released 156 pages in full and 477 pages with redactions, and withheld 47

pages in their entirety. Other documents were referred to the agencies that had originally produced them. The Commodity Futures Trading Commission, the U.S. Citizenship and Immigration Services, and the Federal Bureau of Investigation ("FBI") all released in full the documents referred to them. The Executive Office for United States Attorneys ("EOUSA") released 110 pages in full and ten further pages with redactions. The United States Postal Service ("Postal Service") withheld in their entirety the seven pages referred to it.

Upon completing its disclosures, the Marshals Service again moved for summary judgment on all outstanding claims[1] ("Def.'s 2nd S.J. Mot."), asking the court to "dismiss this case with prejudice with regard to everything but the documents referred to other agencies." It argued its search was now adequate under FOIA and all its decisions to withhold or redact materials were proper under the exemptions to FOIA set forth at 5 U.S.C. § 552(b). In support of this contention, the Marshals Service supplied a declaration from Shaaron L. Keys ("Keys Declaration"), including a table listing twenty-five categories of documents released with redactions ("Redacted Categories 1–25") and four categories of documents withheld in their entirety ("Withheld Categories 1–4"). The Marshals Service again presented no arguments concerning Counts II and III.

Sussman opposed this motion and filed a cross-motion for summary judgment as to Counts I and II ("Pl.'s 2nd S.J. Br."). In support of his cross-motion, Sussman presented a signed

---

[1] In its August 3, 2004 opinion, the court purported to grant summary judgment to Sussman on Count I. Nonetheless, both the court and the parties subsequently acted as if Count I remained undecided pending the Marshals Service's conclusion of its additional search, as ordered by the court. We shall treat Count I the same way and therefore review the court's subsequent ruling from October 13, 2005, on that claim.

declaration from Maydak, who announced, "I do not object to the disclosure of information about me to Sussman." Supplemental Declaration of Keith Maydak ¶ 7 ("Supp. Maydak Decl.").

In a memorandum opinion issued October 31, 2005, the court refused to address Sussman's Count II arguments, stating it had "granted summary judgment on the Privacy Act claim in its August 3, 2004 order." As neither motion addressed Count III, and Counts IV through XVI were dismissed by the August 3, 2004 opinion, the court focused exclusively on Count I.

The court first held the Marshals Service's second search was adequate under FOIA and found all the claimed FOIA exemptions properly invoked. Going beyond the Marshals Service's motion for summary judgment, the court also reviewed the actions of the EOUSA and the Postal Service in withholding materials from Sussman. The court held that the EOUSA had properly redacted ten pages. The court likewise upheld the Postal Service's decision to withhold seven pages, on the ground Sussman had failed to raise any arguments against that decision.

The accompanying order stated that "[j]udgment is entered in favor of defendant," and "[t]his is a final appealable order." We read this language as granting summary judgment to the Marshals Service on Counts II and III.

Sussman filed a timely motion for reconsideration, contesting the court's handling of several FOIA exemptions and arguing he had not forfeited his challenge to the withholding of the Postal Service materials. In its ruling on this motion, the court rejected Sussman's exemption arguments and addressed the Postal Service materials on the merits for the first time.

The Postal Service had first informed Sussman of its decision to withhold the seven pages in a letter dated March 17, 2005, in which it asserted FOIA Exemptions 6 and 7(C) as grounds. Sussman filed an administrative appeal of that decision on March 28, and the Postal Service affirmed its initial decision in a letter sent May 3, 2005, now citing Exemption 7(A), as well. The Marshals Service never officially invoked FOIA exemptions to explain its own failure to release the materials, instead relying on its referral of the materials to the Postal Service as effectively shifting the final responsibility to the latter agency.

The district court reviewed the Postal Service's arguments and found them all valid. On this basis, it "conclude[d] that defendant [*i.e.*, the Marshals Service] has withheld records exempt under FOIA's provisions," and it denied Sussman's motion for reconsideration.

II

Sussman appealed the district court's rulings as to all sixteen of his claims.[2] We granted the Marshals Service's motion for summary affirmance in part and therefore now need decide only the following: (1) whether the Marshals Service's invocation of FOIA Exemptions 2, 3, 5, 7(A), 7(C), and 7(E) as grounds for withholding and redacting documents was proper; (2) whether the Marshals Service could properly withhold the documents referred to the Postal Service; and (3) whether the district court was right to grant summary judgment to the Marshals Service as to Counts II through XVI. We review the district court's decisions on summary judgment motions in FOIA and Privacy Act cases *de novo*. *Sample v. Bureau of Prisons*, 466 F.3d 1086, 1087 (D.C. Cir. 2006); *McCready v. Nicholson*, 465 F.3d 1, 7 (D.C. Cir. 2006). Summary judgment

---

[2] Sussman has not challenged the EOUSA's redactions.

is proper only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

III

We first address Count I as it relates to the Marshals Service's treatment of Redacted Categories 1–25 and Withheld Categories 1–4.

According to 5 U.S.C. § 552(b), FOIA's disclosure requirements are subject to specified exemptions, *see id.* § 552(b)(1)–(9), provided that "[a]ny reasonably segregable portion of a record shall be provided" after exempt portions are deleted. An agency asserting such an exemption has the burden of sustaining its action if challenged in court. *Id.* § 552(a)(4)(B). The exemptions "must be construed narrowly, in such a way as to provide the maximum access consonant with the overall purpose of [FOIA]." *Vaughn v. Rosen*, 484 F.2d 820, 823 (D.C. Cir. 1973).

Sussman challenges various FOIA exemptions claimed by the Marshals Service as grounds for withholding or redacting materials. With respect to Count I, we affirm the district court's grant of summary judgment on Exemptions 5 and 7(E) on the basis of longstanding precedent that requires no further elucidation. *See Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 862 (D.C. Cir. 1980) (recognizing Exemption 5 as exempting from disclosure materials shielded from discovery by traditional evidentiary privileges, including the deliberative process privilege); *Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 256 (D.C. Cir. 1977) ("In some circumstances . . . the disclosure of even purely factual material may so expose the deliberative process within an agency that it must be deemed exempted by section 552(b)(5)."); *Blanton v.*

8

*DOJ*, 64 F. App'x 787, 788–89 (D.C. Cir. 2003) (per curiam) (supporting application of Exemption 7(E) to withhold confidential details of a program whose general contours were publicly known).

Exemptions 2, 3, 7(A), and 7(C) present more complex questions, which we now examine.

A

Exemption 2 covers matters "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). The agency must show that the materials are "predominant[ly] internal[]." *Schwaner v. Dep't of the Air Force*, 898 F.2d 793, 795 (D.C. Cir. 1990). An agency need not disclose if (1) disclosure may risk circumvention of agency regulation, or (2) the material relates to trivial administrative matters of no genuine public interest. *Id.* at 794; *see also Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 670 F.2d 1051, 1074 (D.C. Cir. 1981) (en banc).

We affirm the district court's finding that the Marshals Service properly applied Exemption 2 to shield certain internet addresses, but the application of this exemption to "information reflecting communications between agencies," Keys Decl. ¶ 7, is more problematic. Sussman argues this information is not predominantly internal, and the Marshals Service has provided no evidence to counter his claim. Thus, the Marshals Service failed to carry its burden of proof under 5 U.S.C. § 552(a)(4)(B), and we reverse the district court's finding that Exemption 2 was properly applied to information reflecting interagency communications. Such information appears in Redacted Categories 4, 5, and 13, as well as Withheld Categories 3 and 4. As the Marshals Service asserts additional exemptions with regard to those same materials, however, we vacate the grant of summary

judgment as it relates to those categories, rather than ordering immediate disclosure.

## B

Exemption 3 covers matters "specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3). The Marshals Service applied this exemption to Redacted Category 13, which includes "material that is the subject of a grand jury investigation." Keys Decl. ¶ 8. Federal Rule of Criminal Procedure 6(e) ("FRCP 6(e)") prohibits certain persons from "disclos[ing] a matter occurring before [a] grand jury," FED. R. CRIM. P. 6(e)(2)(B), and that rule counts as a statute for purposes of Exemption 3, as it has been positively enacted by Congress, *Fund for Const. Gov't v. Nat'l Archives & Records Serv.*, 656 F.2d 856, 867 (D.C. Cir. 1981); *see also* Act of July 30, 1977, Pub. L. No. 95-78, § 2, 91 Stat. 319, 319–20. FRCP 6(e) bars disclosure, however, only where it would "tend to reveal some secret aspect of the grand jury's investigation." *Senate of the Commonwealth of P.R. ex rel. Judiciary Comm. v. U.S. DOJ*, 823 F.2d 574, 582 (D.C. Cir. 1987) ("*SCPR*") (internal quotation marks omitted).

Persons not described in FRCP 6(e)(2)(B) incur no obligation of secrecy under FRCP 6(e). FED. R. CRIM. P. 6(e)(2)(A). On the other hand, we do not believe FOIA requires us to compound Rule 6(e) violations by requiring full disclosure whenever an agent not covered by FRCP 6(e)(2)(B) obtains information. Thus, for Sussman to defeat the Marshals Service's invocation of Exemption 3, there must be a clear path by which the information sought to be withheld has reached someone within the Marshals Service without violating FRCP

6(e), and that USMS agent must be able to disclose the material to Sussman without himself violating FRCP 6(e).[3]

On the current record, we are unable to determine whether these conditions are satisfied. Moreover, the Marshals Service has failed to demonstrate disclosure would "tend to reveal some secret aspect of the grand jury's investigation," as required by our holding in *SCPR*, 823 F.2d at 582. We therefore vacate the district court's finding that the Marshals Service acted properly with respect to Redacted Category 13. On remand, the trial court should resolve both outstanding issues, reviewing the materials *in camera* if necessary. *See* 5 U.S.C. § 552(a)(4)(B); *Mays v. DEA*, 234 F.3d 1324, 1328 (D.C. Cir. 2000).

C

Exemption 7 permits the withholding of "records or information compiled for law enforcement purposes," but only to the extent one or more listed risks are present. 5 U.S.C. § 552(b)(7); *see NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 221–22 (1978). Sussman does not dispute that the materials withheld pursuant to Exemption 7 were compiled for law enforcement purposes; he does, however, argue that none of the listed risks apply. We address Exemptions 7(A) and 7(C) in turn.

1

Exemption 7(A) covers materials compiled for law enforcement purposes whose disclosure "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). The enforcement proceedings need not be currently ongoing; it suffices for them to be "reasonably antici-

---

[3] The Marshals Service of course retains the burden of proving these conditions are not satisfied. 5 U.S.C. § 552(a)(4)(B).

pated." *Mapother v. DOJ*, 3 F.3d 1533, 1540 (D.C. Cir. 1993) (emphasis omitted).

The Marshals Service applied Exemption 7(A) to Redacted Category 13, withholding "records or information that is relevant to pending grand jury investigations into the financial activities of plaintiff's associates." Keys Decl. ¶ 10. The Keys Declaration further opined, "Release of this information could reasonably be viewed as revealing the focus of the grand jury investigation." *Id.* ¶ 8. Under *Campbell v. Department of Health & Human Services*, however, it is not sufficient for an agency merely to state that disclosure would reveal the focus of an investigation; it must rather demonstrate *how* disclosure would reveal that focus. 682 F.2d 256, 265 (D.C. Cir. 1982).

In the context of Exemption 7(A), the affidavits we have approved in the past have all gone a significant distance further than the Keys Declaration. *See, e.g.*, *Ctr. for Nat'l Sec. Studies v. U.S. DOJ*, 331 F.3d 918, 923 (D.C. Cir. 2003); *Swan v. SEC*, 96 F.3d 498, 499 (D.C. Cir. 1996); *Mapother*, 3 F.3d at 1542–43; *Alyeska Pipeline Serv. Co. v. U.S. EPA*, 856 F.2d 309, 312 (D.C. Cir. 1988). Even in *Boyd v. Criminal Division of the U.S. DOJ*, 475 F.3d 381 (D.C. Cir. 2007), which the Marshals Service cites as setting a low threshold for Exemption 7(A) supporting documents, we required specific information about the impact of the disclosures, *see id.* at 386. Absent testimony of similar or greater specificity, and without an *in camera* review of the documents at issue, courts cannot determine that, as a matter of law, disclosure "could reasonably be expected to interfere with enforcement proceedings." Hence, we must vacate the district court's finding that Exemption 7(A) was properly applied.

The Marshals Service cites *Robbins Tire* for the proposition that "whenever the government's case in court would be harmed

by the premature release of evidence or information," the harm from disclosure is sufficient to support application of Exemption 7(A). Appellee's Br. 24 (internal quotation marks omitted). But it is not clear the Supreme Court actually adopted such a rule, *see Robbins Tire*, 437 U.S. at 232 (noting Senator Hart had expressed such a view), and on the record before us it is impossible to determine whether disclosure would in fact impede such an investigation. In *Curran v. DOJ*, another case cited by the Marshals Service, the First Circuit approved the use of Exemption 7(A), but only because a government affidavit "carefully explained to the district court how the release . . . would 'interfere' with enforcement proceedings," which the court deemed sufficient when "coupled with the remaining divulgements in the ten page affidavit." 813 F.2d 473, 476 (1st Cir. 1987). Finally, to the extent *Spannaus v. U.S. DOJ*, 813 F.2d 1285, 1287 (4th Cir. 1987), can be read as setting a lower hurdle for affidavits in support of an invocation of Exemption 7(A), we decline to follow the Fourth Circuit's lead.[4]

On remand, the district court must determine whether disclosure of the materials withheld pursuant to Exemption 7(A) could in fact reasonably be expected to interfere with enforcement proceedings. *See* 5 U.S.C. § 552(b)(7)(A). And, contrary to the Marshals Service's contention, the relevant proceedings must be pending or reasonably anticipated at the time of the district court's eventual decision, not merely at the time of Sussman's original FOIA request, in order to support redaction under Exemption 7(A). *See August v. FBI*, 328 F.3d 697, 698 (D.C. Cir. 2003).

---

[4] We note that in *Spannaus*, the Fourth Circuit was not reviewing the district court's decision *de novo*. *Spannaus*, 813 F.2d at 1288 & n.4. It is not clear that the court would have found the government's affidavit sufficient under the more probing standard of review we apply.

2

Exemption 7(C) covers materials compiled for law enforcement purposes whose disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). To determine whether Exemption 7(C) applies, we "balance the privacy interests that would be compromised by disclosure against the public interest in release of the requested information." *Davis v. U.S. DOJ*, 968 F.2d 1276, 1281 (D.C. Cir. 1992). Where a legitimate privacy interest is implicated, the requester must "(1) show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake, and (2) show the information is likely to advance that interest." *Boyd*, 475 F.3d at 387 (internal quotation marks omitted) (quoting *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004)).

On one side of the scale, the exemption protects the privacy interests of all persons mentioned in law enforcement records, whether they be investigators, suspects, witnesses, or informants. *See Schrecker v. U.S. DOJ*, 349 F.3d 657, 661 (D.C. Cir. 2003) (citing cases). On the other side, "the only public interest relevant for purposes of Exemption 7(C) is one that focuses on the citizens' right to be informed about what their government is up to." *Davis*, 968 F.2d at 1282 (internal quotation marks omitted) (quoting *U.S. DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)). Names of private individuals are thus generally exempt from disclosure except, for example, where they are required to confirm or refute allegations of improper government activity. *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1205–06 (D.C. Cir. 1991). Even then, "the requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety

might have occurred" in order to gain disclosure. *Favish*, 541 U.S. at 174; *see also Boyd*, 475 F.3d at 387.

The Marshals Service applied Exemption 7(C) to withhold names, addresses, telephone numbers, social security numbers, and other such private information regarding law enforcement officials, a "judicial protectee," other government employees, unnamed "third-party individuals," and (apparently) Maydak. Keys Decl. ¶ 11; Supp. Maydak Decl. ¶ 2. The Marshals Service used this exemption in relation to all the Redacted and Withheld Categories aside from Redacted Category 3. Redacted Categories 1 and 23 concerned a law enforcement officer and the judicial protectee respectively; all others included information on unspecified individuals, possibly including Maydak. *See* Keys Decl. ¶¶ 18–19.

The district court found Sussman had not alleged misconduct on the part of the Marshals Service and hence upheld application of Exemption 7(C). *See SafeCard Servs.*, 926 F.2d at 1205–06. While we find Sussman did in fact allege misconduct, his bare and undeveloped allegations would not warrant a belief by a reasonable person that impropriety might have occurred. *See Favish*, 541 U.S. at 174.

However, Sussman makes one substantive argument. He maintains Exemption 7(C) cannot apply to materials concerning Maydak, as Maydak "authorize[d] the release of documents about him[self]." Appellant's Br. 26 (citing Supp. Maydak Decl. ¶ 7). While Sussman first produced this apparent authorization on May 16, 2005, several weeks after the Marshals Service completed its court-ordered search of its records, this court has previously required disclosure where authorization arrived late. *Computer Prof'ls for Soc. Responsibility v. U.S. Secret Serv.*, 72 F.3d 897, 900–01, 904–05 (D.C. Cir. 1996). Thus, if Maydak waived his privacy interest under FOIA, the

Marshals Service cannot withhold materials concerning him based on Exemption 7(C).

We cannot determine on the record before us whether Maydak in fact waived his FOIA privacy interest. First, as the district court did not reach the question of Maydak's waiver, we cannot say with certainty that it is genuine, much less that it was knowing, intelligent, and voluntary. Though we have no reason to doubt the authenticity of the waiver, these are issues for the district court to analyze on remand. Second, Maydak's Supplemental Declaration states, "I do not object to the disclosure of information about me to Sussman." Supp. Maydak Decl. ¶ 7. It is not clear this amounts to a full-scale waiver of Maydak's privacy interest under FOIA, where disclosure would release the contested materials to *the world at large*, not just to Sussman. Here too the district court is the proper forum for determining whether Maydak in fact consents to such unlimited disclosure, for which reason we vacate the finding that Exemption 7(C) was properly applied to cover materials private to Maydak.

As we cannot be sure which categories this ruling impacts, we must vacate the district court's grant of summary judgment on Count I to the extent it covers Redacted Categories 2, 4–22, and 24–25, as well as all four Withheld Categories. But as Maydak's waiver has no effect on the privacy interests of others, we affirm the district court's finding that the Marshals Service properly applied Exemption 7(C) to protect the privacy of individuals other than Maydak. On remand, the district court should determine whether Maydak has indeed waived his FOIA privacy interest, and if so which materials may thus be disclosed without concomitantly revealing information private to others. *See Computer Prof'ls*, 72 F.3d at 904 (requiring materials disclosed pursuant to waivers to be "redacted to protect the interests of individuals who have not waived their rights").

D

Even when FOIA exemptions apply, "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). This rule of segregation applies to all FOIA exemptions. *Ctr. for Auto Safety v. EPA*, 731 F.2d 16, 21 (D.C. Cir. 1984). "It has long been a rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Cent.*, 566 F.2d at 260. Before approving the application of a FOIA exemption, the district court must make specific findings of segregability regarding the documents to be withheld. *Summers v. DOJ*, 140 F.3d 1077, 1081 (D.C. Cir. 1998); *Krikorian v. Dep't of State*, 984 F.2d 461, 467 (D.C. Cir. 1993). If the district court approves withholding without such a finding, remand is required even if the requester did not raise the issue of segregability before the court. *Johnson v. EOUSA*, 310 F.3d 771, 776 (D.C. Cir. 2002); *Trans-Pac. Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999).

Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material. *Boyd*, 475 F.3d at 391. The quantum of evidence required to overcome that presumption is not clear. *Compare United States v. Chem. Found., Inc.*, 272 U.S. 1, 14–15 (1926) ("The presumption of regularity supports the official acts of public officers and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties."), *with Favish*, 541 U.S. at 174 (holding that "[g]iven FOIA's prodisclosure purpose," a less stringent standard whereby a requester need only "produce evidence that would warrant a belief by a reasonable person" "is more faithful to the statutory scheme" in some contexts). If the requester successfully rebuts this presumption, the burden lies with the government to

demonstrate that no segregable, nonexempt portions were withheld. 5 U.S.C. § 552(a)(4)(B); *Paisley v. CIA*, 712 F.2d 686, 700 (D.C. Cir. 1983), *vacated in part on other grounds*, 724 F.2d 201 (D.C. Cir. 1984) (per curiam).

Here, the district court made the necessary finding that the Marshals Service had not withheld any segregable, nonexempt materials. Even under the less demanding *Favish* standard, Sussman has not persuaded us that these findings were incorrect. However, to the extent the district court orders additional disclosures on remand, new segregability findings will be required.

## IV

We turn next to Count I as it relates to the seven pages the Marshals Service referred to the Postal Service, which the Postal Service then decided to withhold pursuant to FOIA Exemptions 6, 7(A), and 7(C).

## A

The Marshals Service moved for summary judgment "with regard to *everything but the documents referred to other agencies*." Def.'s 2nd S.J. Mot. 1–2 (emphasis added). In its accompanying brief, the Marshals Service provided no arguments supporting summary judgment as to the Postal Service materials. The Marshals Service mentioned the Postal Service's invocation of Exemptions 6 and 7(C) in its opposition to Sussman's second motion for summary judgment,[5] but only as a reason to deny summary judgment to Sussman, not as a basis

---

[5] Exemption 6 protects from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).

for summary judgment in its own favor. Nonetheless, the district court granted the Marshals Service summary judgment as to the Postal Service materials and later denied Sussman's motion for reconsideration.

"While district courts possess the authority to enter summary judgment against a party *sua sponte*, that authority may only be exercised 'so long as the losing party was on notice that she had to come forward with all of her evidence.'" *McBride v. Merrell Dow & Pharms., Inc.*, 800 F.2d 1208, 1212 (D.C. Cir. 1986) (citation omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986)). Here, notice was inadequate, and the Marshals Service's response to Sussman's motion to reconsider did not correct this inadequacy. Therefore, summary judgment in favor of the Marshals Service was improper.

B

We next consider whether, instead, *Sussman* is entitled to summary judgment as regards disclosure of the seven pages referred to the Postal Service.

Agencies cannot simply refer documents to other agencies as a matter of course but must show that the procedure is reasonable under the circumstances. *See McGehee v. CIA*, 697 F.2d 1095, 1110 (D.C. Cir. 1983) (describing a test for when referrals result in improper withholding). In particular, FOIA explicitly permits "consultation . . . with another agency having a substantial interest in the determination of the request," 5 U.S.C. § 552(a)(6)(B)(iii)(III), and if an agency chooses outright referral instead, "the advantages that would be secured by delegating *all* responsibility for reviewing the document . . . rather than engaging in . . . 'consultation' . . . must then be balanced against any inconvenience to the requester caused by the referral," *McGehee*, 697 F.2d at 1111 n.71.

Sussman mistakenly reads *McGehee* as barring referrals outright. *McGehee*'s description of consultation as "the *only* procedure expressly set forth in [FOIA]" to deal with situations in which one agency possesses documents in which a second agency has a substantial interest, *id.*, merely reiterates that consultation is *per se* acceptable; it does not preclude other reasonable procedures. Similarly, *McGehee*'s admonition that the agency receiving the initial request "cannot simply refuse to act on the ground that the documents originated elsewhere," *id.* at 1110, indeed imposes a duty on that agency, but the agency may acquit itself through a referral, provided the referral does not lead to improper withholding under the *McGehee* test. *See, e.g.*, *Peralta v. U.S. Attorney's Office*, 136 F.3d 169, 175–76 (D.C. Cir. 1998) (applying *McGehee* where the EOUSA referred materials to the FBI for final disposition rather than releasing them or citing exemptions directly).

Thus, Sussman's argument against referrals fails. As the current record contains insufficient evidence to establish improper withholding under *McGehee*, Sussman does not deserve summary judgment on this ground.

In the alternative, Sussman argues he deserves summary judgment as to the Postal Service materials because the Marshals Service failed to "show[] evidence . . . that the documents were exempt from disclosure." Pl.'s 2nd S.J. Br. 2. Sussman raised this argument in the brief accompanying his second summary judgment motion, and the only evidence the Marshals Service provided to support its opposition was the Postal Service's March 17, 2005 letter to Sussman, which announced the Postal Service's invocation of Exemptions 6 and 7(C) but did not explain why they applied. In its subsequent opposition to Sussman's motion for reconsideration, however, the Marshals Service did present evidence sufficient to create a genuine issue of fact as to the applicability of Exemptions 6, 7(A), and 7(C),

to wit a declaration by Postal Service employee John Patrick Tyrrell. We have in the past permitted agencies to escape summary judgment in FOIA cases based on evidence first submitted on motions for reconsideration, *see Computer Prof'ls*, 72 F.3d at 900, 903, and Sussman has presented no argument as to why this rule should not apply in the instant case. Therefore, based on the Tyrrell Declaration, we find Sussman's second argument fails as well, and hence we affirm the district court's denial of his motion for summary judgment as to the Postal Service materials.

C

Because neither party deserves summary judgment as to these materials, we vacate the district court's grant of summary judgment to the Marshals Service and remand for further proceedings. Sussman argues that on remand, the Marshals Service should not be permitted to assert FOIA exemptions, as it failed to do so in proceedings before the district court prior to this appeal.

Sussman errs with regard to Exemptions 6 and 7(C). In its opposition to Sussman's second motion for summary judgment, the Marshals Service explicitly referenced those two exemptions, and the court needed to consider those exemptions when ruling on the motion. Thus, the invocation sufficed to avoid waiver. *See Ryan v. DOJ*, 617 F.2d 781, 792 n.38a (D.C. Cir. 1980).

As for Exemption 7(A), the question is closer. We have found no case in this circuit that definitively confirms or rejects the power of the government to avoid waiver by invoking a FOIA exemption for the first time in a motion for—or opposi-

tion to—reconsideration.[6] But the logic underlying our cases in this area suggests that invocation even at that late stage is proper, at least where the district court chooses to entertain the new argument.

For example, our seminal case on waiver in the FOIA context held that "[a]n agency cannot prevail on an exemption that it has not raised either at the agency level or in the district court and *that it has invoked for the first time in the appellate court*." *Jordan v. U.S. DOJ*, 591 F.2d 753, 779 (D.C. Cir. 1978) (en banc) (emphasis added), *overruled in part on other grounds*, *Crooker*, 670 F.2d 1051. Furthermore, where an agency fails "through pure mistake" to cite a particular exemption, the appellate court has discretion to remand for consideration of the exemption, at least where the government's case is sufficiently strong. *See August*, 328 F.3d at 700. As the Postal Service had already issued its May 3, 2005 letter invoking Exemption 7(A) when the Marshals Service filed its opposition to Sussman's second motion for summary judgment, the Marshals Service's omission of that exemption qualifies as such a mistake. Finally, we note that the district court "is vested with a large measure of discretion in deciding whether to grant a Rule 60(b) motion," *Twelve John Does v. District of Columbia*, 841 F.2d 1133, 1138 (D.C. Cir. 1988), and it chose to entertain the Marshals Service's Exemption 7(A) argument on reconsideration.

For all of these reasons, we hold that the Marshals Service properly invoked Exemption 7(A), as well as Exemptions 6 and 7(C). We remand to the district court for consideration of the merits of these three exemptions.

---

[6] The Internal Revenue Service raised new exemptions in a motion for reconsideration in *Taxation with Representation Fund v. IRS*, 646 F.2d 666 (D.C. Cir. 1981), but abandoned the new exemptions on appeal.

V

Sussman's remaining claims all rely on the Privacy Act, 5 U.S.C. § 552a. We consider first Count II, in which Sussman again seeks disclosure of the materials described above. Under 5 U.S.C. § 552a(d)(1), each "agency that maintains a system of records" must, "upon request by any individual to gain access to his record or to any information pertaining to him which is contained in the system, permit him . . . to review the record and have a copy made of all or any portion thereof in a form comprehensible to him." Heads of agencies may, however, promulgate rules exempting particular systems of records from § 552a(d)(1) under conditions described at § 552a(j)–(k).

Sussman properly issued a § 552a(d)(1) request, and the Marshals Service does not contest its status as an "agency that maintains a system of records." Furthermore, by failing to raise the issue before the district court, the Marshals Service has forfeited the right to argue a Privacy Act exemption applies to the materials it processed directly. *See Benavides v. U.S. Bureau of Prisons*, 995 F.2d 269, 273 (D.C. Cir. 1993) (extending *Jordan*'s waiver rule to Privacy Act cases). Likewise, as neither the Marshals Service nor the Postal Service invoked them, Privacy Act exemptions for the Postal Service materials are also forfeited.

But that is not the end of the story. The Marshals Service argues the materials Sussman seeks do not qualify for mandatory disclosure under § 552a(d)(1). The precise contours of an agency's duty under § 552a(d)(1) have never been defined in this circuit.[7] We do, however, have guidance from the Office of

---

[7] While we have occasionally summarized this provision in language that suggests its scope, *e.g.*, *McCready*, 465 F.3d at 8; *Horowitz v. Peace Corps*, 428 F.3d 271, 280 (D.C. Cir. 2005), we have never confronted the question directly.

Management and Budget ("OMB"), the language of the statute, and common sense.

First, OMB guidelines released in 1975 advise that "[i]f an individual is named in a record about someone else . . . and the agency only retrieves the portion pertaining to him by reference to the other person's name . . . , the agency is not required to grant him access" pursuant to 5 U.S.C. § 552a(d)(1). Privacy Act Guidelines, 40 Fed. Reg. 28,949, 28,957 (1975) ("OMB Guidelines"). Congress explicitly tasked the OMB with promulgating guidelines for implementing the Privacy Act, Privacy Act of 1974, § 6, Pub. L. No. 93-579, 88 Stat. 1896, 1909, and we therefore give the OMB Guidelines "the deference usually accorded interpretation of a statute by the agency charged with its administration," *Albright v. United States*, 631 F.2d 915, 920 n.5 (D.C. Cir. 1980).[8]

Second, the language of § 552a(d)(1) strongly suggests individuals may access only their own records, not information pertaining to them in other people's records. Under that provision, the duty to disclose is triggered by an individual's

---

[8] The OMB apparently invited no public comment prior to publishing its guidelines, *see* OMB Circular A-108, 40 Fed. Reg. 28,948 (1975) (announcing rules without citing earlier notice), and after we decided *Albright*, Congress pointedly replaced its original grant of authority to the OMB with one that expressly required the OMB to respect such procedural niceties before its guidelines could be binding, Computer Matching and Privacy Protection Act of 1988, § 6, Pub. L. No. 100-503, 102 Stat. 2507, 2513. But Congress made clear the change was not meant to disturb existing guidelines. H.R. REP. NO. 100-802, at 36 (1988). Hence, the old OMB Guidelines still deserve the same level of deference they enjoyed prior to the 1988 amendment. *See Henke v. U.S. Dep't of Commerce*, 83 F.3d 1453, 1460 n.12 (D.C. Cir. 1996) (quoting *Albright* in dicta after the amendment); *see also Doe v. Chao*, 540 U.S. 614, 633 (2004) (Ginsburg, J., dissenting) (citing the OMB Guidelines).

request for either (1) "his record" or (2) "any information pertaining to him which is contained in the system [of records]," but in either case the agency is required to present only "the record." It is a well-established rule of statutory construction that "when Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 452 (2002) (internal quotation marks omitted). According to this principle, the OMB is right to exclude from mandatory disclosure those materials pertaining to a requesting individual but contained only in *other* individuals' files.

Third, this seems the only reasonable interpretation, as the opposite approach would force agencies to search every last datum they maintain, in case it might pertain to the requesting party. With records spread through multiple databases, kept in disparate forms, and retained in non-electronic media, this would be such an onerous task that we hesitate to assume Congress imposed it upon agencies *sub silentio*.

For all of these reasons, we interpret 5 U.S.C. § 552a(d)(1) to give parties access only to their own records, not to all information pertaining to them that happens to be contained in a system of records. For an assemblage of data to qualify as one of Sussman's records, it must not only contain his name or other identifying particulars but also be "about" him. *Tobey v. NLRB*, 40 F.3d 469, 472 (D.C. Cir. 1994). That is, it must actually describe him in some way. *Id.* Hence, only those records that are "about" Sussman are subject to disclosure based on his § 552a(d)(1) request. *Accord* OMB Circular A-130, § 8a(9)(d), 58 Fed. Reg. 36,068, 36,073 (1993) (instructing agencies to "[p]rovide individuals, upon request, access to records *about them*" (emphasis added)).

Thus, pursuant to the Privacy Act, the Marshals Service must disclose to Sussman those materials—and only those materials—contained in records about him, the release of which would not violate 5 U.S.C. § 552a(b).[9] However, the current record does not permit identification of those materials. For FOIA purposes, the question of whose records contained the requested information was immaterial, *see Military Audit Project v. Casey*, 656 F.2d 724, 730 n.11 (D.C. Cir. 1981), and the district court reviewed the Marshals Service's search efforts only in terms of FOIA. Therefore, the question remains factually unresolved, and we vacate the grant of summary judgment on Count II and remand to the district court.

## VI

In Counts IV through XVI, Sussman alleges the Marshals Service improperly revealed information about him and thereby adversely affected him. *See* 5 U.S.C. § 552a(b), (g)(1)(D). Sussman seeks an injunction against "further unlawful disclosures," as well as "any other relief that is appropriate and just under the circumstances." *E.g.*, Am. Compl. at 11. Sussman further claims the Marshals Service's actions were "intentional and willful," so that he may recover monetary damages under 5 U.S.C. § 552a(g)(4). The Marshals Service moved for summary judgment on these counts; Sussman did not.

---

[9] If certain materials pertain to both Sussman and other individuals, from whom the Marshals Service has received no written consent permitting disclosure, the Privacy Act would both require (5 U.S.C. § 552a(d)(1)) and forbid (*id.* § 552a(b)) their disclosure. As the consent requirement in § 552a(b) is "one of the most important, if not the most important, provisions" in the Privacy Act, H.R. REP. NO. 93-1416, at 12 (1974), the prohibition must take precedence. *See Blazy v. Tenet*, 194 F.3d 90, 96 (D.C. Cir. 1999) ("Unlike FOIA, the Privacy Act's primary purpose is not disclosure.").

According to 5 U.S.C. § 552a(b), "[n]o agency shall disclose any record which is contained in a system of records" except under certain listed circumstances, such as when the disclosure would be for a "routine use." If the materials were not contained in a "record," as defined at § 552a(a)(4), there can be no violation. Sussman has, however, put forward sufficient evidence to support a finding that the materials were contained in a record, albeit potentially one pertaining primarily to Maydak or a judge. *See* Supplemental Declaration of Michael Sussman ¶¶ 2–3 (filed Apr. 26, 2004) ("1st Supp. Sussman Decl."). Summary judgment on this issue is therefore improper at the present stage.

Counts IV through XVI are predicated on 5 U.S.C. § 552a(g)(1)(D), a catch-all provision creating a civil cause of action for violations not described in § 552a(g)(1)(A)–(C). We have held that only monetary damages, not declaratory or injunctive relief, are available to § 552a(g)(1)(D) plaintiffs, *Doe v. Stephens*, 851 F.2d 1457, 1463 (D.C. Cir. 1988),[10] and such monetary damages are available only where "the agency acted in a manner which was intentional or willful," 5 U.S.C. § 552a(g)(4). Thus, proof of intent or willfulness is a necessary element of Sussman's claims, and failure to provide supporting evidence would lead to summary judgment in favor of the Marshals Service. *Celotex*, 477 U.S. at 322–23.

Sussman argues the willfulness issue is not ripe for appeal, citing *Maydak v. U.S. DOJ*, 363 F.3d 512 (D.C. Cir. 2004). In that case, we found "no basis for summary judgment," as the

---

[10] As *Doe*, like the instant case, concerned remedies under 5 U.S.C. § 552a(g)(1)(D) for violations of § 552a(b), we treat it as controlling, despite this court's subsequent suggestion that the district court retains "inherent equitable powers" to issue injunctions in § 552a(g)(1)(D) cases predicated on violations of § 552a(e)(7). *See Haase v. Sessions*, 893 F.2d 370, 374 n.6 (D.C. Cir. 1990).

question of intent or willfulness was "entirely undeveloped in the record." *Id.* at 521. Sussman reasons that an absence of evidence as to this element in his case renders the question equally undeveloped and prevents summary judgment here also. But Sussman misreads *Maydak*. In that case, the government contested the willfulness element only in a reply, not (as here) in its original motion for summary judgment; thus, Maydak was not obliged to produce evidence in rebuttal, while Sussman was. *See McBride*, 800 F.2d at 1212.

"An agency acts in an intentional or willful manner 'either by committing the act without grounds for believing it to be lawful, or by flagrantly disregarding others' rights under the Act.'" *Deters v. U.S. Parole Comm'n*, 85 F.3d 655, 660 (D.C. Cir. 1996) (quoting *Albright v. United States*, 732 F.2d 181, 189 (D.C. Cir. 1984)). "'The violation must be so patently egregious and unlawful that anyone undertaking the conduct should have known it unlawful.'" *Id.* (alteration omitted) (quoting *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987) (per curiam)). The only evidence Sussman cited before the district court on this issue was paragraph 7 of his First Supplemental Declaration, which asserted that "the allegations in the *Amended Complaint* . . . are true and correct to the best of my knowledge." Those allegations touched on willfulness only at paragraph 99, which claimed USMS agents "were yelling and screaming their allegations and theories in an effort to intimidate." But paragraph 99 applies only to Count VII, and Sussman presented no similar evidence in relation to his other improper disclosure claims. Thus, summary judgment was proper as to Counts IV through VI and VIII through XVI, but Count VII survives.

The Marshals Service argues that any disclosures it made were covered by the "routine use" exception. *See* 5 U.S.C. § 552a(b)(3). In particular, the Marshals Service claims

authorization under 64 Fed. Reg. 60,832, 60,839 (1999), which permits disclosure of WIN records "to the extent necessary to obtain information or cooperation in USMS fugitive investigations and apprehension efforts." But the Marshals Service's motion for summary judgment cited no evidence tending to show the disclosures in Count VII satisfied that criterion. *See* Def.'s 1st S.J. Memo 15–17. By contrast, Sussman's testimony regarding "yelling and screaming" suggests the disclosures went beyond what was "necessary to obtain information or cooperation." *See* 1st Supp. Sussman Decl. ¶ 7; Amended Complaint ¶ 99. Thus, we cannot say summary judgment for the Marshals Service on Count VII was proper on this ground, either.

However, the Marshals Service also claims Sussman has failed to show the information allegedly disclosed was in a record "contained in a 'system of records' retrievable by plaintiff's name or other personal identifier." Def.'s 1st S.J. Memo 14. This is a subtle argument. The Marshals Service is not denying the materials were in a system of records, a point it concedes. *See* Appellee's Br. 9 ("The information was not maintained in a system of records retrievable by Sussman's name, *but by Maydak's name*." (emphasis added)). Rather, its argument presumes that, in order to recover, Sussman must show the Marshals Service improperly disclosed materials located in records *retrievable by Sussman's name* as opposed to someone else's name. We agree.

Section 552a(b) restricts the disclosure of "any record which is contained in a system of records." A grouping of information is a "record" if it is (1) about an individual and (2) maintained by an agency. 5 U.S.C. § 552a(a)(4). A "system of records" is in turn "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other

identifying particular assigned to the individual." *Id.* § 552a(a)(5).

If a record is retrievable by reference to some name other than Sussman's, the information is part of a "system of records," but it is not clear Sussman may recover damages for its disclosure. We have never decided whether an adversely affected individual can bring suit under § 552a(g)(1)(D) for the improper disclosure of another person's records, a question we once described as "interesting and, so far as we determine, unresolved," *Tijerina v. Walters*, 821 F.2d 789, 794 (D.C. Cir. 1987).

The Privacy Act authorizes civil suits by individuals who satisfy any of the four subsections under 5 U.S.C. § 552a(g)(1). Subsections (A) through (C) limit suits to individuals whose Privacy Act rights are infringed, but subsection (D) includes no such explicit limit, suggesting it may apply more generally. But one could equally argue that as subsections (A) through (C) create rights of action for the infringement of specific Privacy Act rights, subsection (D)'s seemingly broad reference to an "adverse effect" should likewise be read to encompass only the infringement of Privacy Act rights. Given this ambiguity, we must construe § 552a(g)(1)(D)'s waiver of sovereign immunity narrowly. *See Soc. Sec. Admin. v. FLRA*, 201 F.3d 465, 471 (D.C. Cir. 2000); *see also Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685–86 (1983). We therefore interpret § 552a(g)(1)(D) to permit claims predicated on § 552a(b) violations *only* by a person whose records are actually disclosed.

Thus, for his action to survive, Sussman must present evidence that materials from records *about him*, which the Marshals Service retrieved by *his name*, were improperly disclosed. Since Sussman was unaware of this requirement or the need to rebut it, fairness demands he be given a chance to do so now. *See McBride*, 800 F.2d at 1212; *cf. Kimberlin v. Quinlan*, 199 F.3d 496, 500 (D.C. Cir. 1999) (noting law-of-the-

case doctrine is inapplicable if a change in the law intervenes). Accordingly, we vacate the district court's grant of summary judgment as to Count VII and remand for further proceedings.

## VII

Finally, we consider Count III. Sussman never moved for summary judgment on this claim. The Marshals Service did, but it provided no arguments supporting its request. The district court granted summary judgment to the Marshals Service without analysis or explanation. The core elements of the claim are (1) failure by the Marshals Service to maintain an accurate accounting of disclosures, and (2) a resultant adverse effect on Sussman. 5 U.S.C. § 552a(c)(1), (g)(1)(D). Nothing in the Marshals Service's affidavits negates either element. Thus, summary judgment was improper, and we vacate the district court's order as to Count III and remand for further proceedings. As Count III is again predicated on 5 U.S.C. § 552a(g)(1)(D), our interpretation of that provision governs here as well; that is, Sussman can recover for accounting failures regarding disclosures only to the extent those disclosures involved materials in *his* records.

## VIII

For the reasons described above, we affirm the district court's grant of summary judgment to the Marshals Service on Count I to the extent it covers Redacted Categories 1, 3, and 23, but vacate it to the extent it covers Redacted Categories 2, 4–22, and 24–25, as well as the four Withheld Categories and the seven pages of documents referred to the Postal Service. We vacate the grant of summary judgment on Count II insofar as it relates to the Withheld and Redacted Categories and the materials referred to the Postal Service. We affirm the grant as to Counts IV through VI and VIII through XVI, but vacate it

with respect to Counts III and VII. The case is remanded to the district court for such further proceedings as may be required, consistent with this opinion.

*So ordered.*