4. The CIA's withholdings
Finally, Talbot challenges the CIA's withholdings. The CIA asserted withholdings, some in part and some in full, under three FOIA exemptions: Exemption 1 (for classified information), Exemption 3 (for records exempt from disclosure by statute), and Exemption 6 (for personal information). The Court concludes that the CIA's withholdings were proper.
a. Exemption 3
The CIA withheld several documents in part or in full under Exemption 3, which applies to records exempted from release under FOIA by another statute, see 5 U.S.C. § 552(b)(3). The CIA bases its withholdings on two specific statutes: the Central Intelligence Agency Act ("CIA Act") and the National Security Act. The CIA Act prevents the disclosure of "the organization, functions, names, official titles, salaries, or numbers of personnel employed by the Agency." 50 U.S.C. § 3507. The National Security Act broadly directs the Director of National Intelligence to "protect intelligence sources and methods from unauthorized disclosure." 50 U.S.C. § 3024(i)(1). Both statutes have been recognized as valid Exemption 3 statutes. See DiBacco v. U.S. Dep't of the Army, 234 F.Supp.3d 255, 275 (D.D.C. 2017) (CIA Act); CIA v. Simms, 471 U.S. 159, 168, 105 S.Ct. 1881, 85 L.Ed.2d 173 (1985) (National Security Act).
The Court will start with the withholdings under the CIA Act. In her declaration, Ms. Shiner states that the agency withheld the "names, titles, identification numbers, and information pertaining to the organization (such as office titles) of CIA personnel" under Exemption 3, since such information falls under the CIA Act and its release could subject former intelligence officers and their families to "intimidation or possible physical harm." Decl. of Antoinette B. Shiner ¶ 38.
Talbot first challenges these withholdings on the ground that the records are not "personnel documents," Pl.'s Cross-MSJ at 39, or "personnel information," Pl.'s Reply at 14. This argument is unavailing. The statute specifically protects the disclosure of "names, official titles, [and] salaries." 50 U.S.C. § 3507. A perusal of the CIA's Vaughn index shows this is precisely the type of information it withheld. See, e.g., Decl. of Antoinette B. Shiner Ex. L (Vaughn index) entry 6 (redacted names of CIA personnel); id. entry 52 (redacted names of personnel and employee ID numbers); id. entry 79 (redacted identifying information of CIA personnel). That such information may not be in a "personnel document" is irrelevant: the statute nowhere says it applies only to names, titles, and salaries in personnel documents. See, e.g., DiBacco, 234 F.Supp.3d at 277.
Talbot also contends that the CIA Act does not apply to former or deceased employees. Pl.'s Reply at 14. But he cites no authority for this proposition, and the statutory text is to the contrary. It protects the names and titles of personnel "employed by the Agency." 50 U.S.C. § 3507 (emphasis added). A former or deceased employee was still employed by the CIA. Thus, as other judges in this District have concluded, the plain text of the statute encompasses names and other information for former or deceased employees. See, e.g., DiBacco, 234 F.Supp.3d at 277 ; Hall v. CIA, 881 F.Supp.2d 38, 66 (D.D.C. 2012). And clearly, the kind of harm that can flow from the disclosure of such information-exposing CIA personnel and their families to "intimidation or physical harm," Decl. of Antoinette B. Shiner ¶ 38-is just as capable of occurring to former or deceased employees and their families as to current *373 employees and their families. The CIA has thus justified the withholdings it made under the CIA Act.
Second, the CIA made a series of withholdings pursuant to Exemption 3 in reliance on the National Security Act.[5] Ms. Shiner's declaration attests that the CIA withheld information that "concerns intelligence sources and methods." Id. ¶¶ 36-37. It further details the categories of withheld information contained in the records-foreign liaison services, locations of and assignments to permanent overseas field installations, the use of cover and cover methods, and coding information[6] -and the harms to national security that would flow from disclosure of such information, including damage to the U.S. government's relationship with foreign intelligence partners, and disclosure of the location of clandestine CIA bases and the agency's intelligence methods. Id. ¶¶ 28-34.
Talbot's main challenge to the Exemption 3 withholdings is that the text of the National Security Act only prohibits unauthorized disclosures and the CIA has not demonstrated that disclosure here would be unauthorized. Pl.'s Cross-MSJ at 39. Talbot notes that much of the relevant information is likely no longer classified because of automatic-declassification provisions for records more than 25 or 50 years old. Id.; see also Pl.'s Reply at 13. "If information has been declassified," he argues, "its disclosure is no longer unauthorized." Pl.'s Reply at 13.
This argument is unavailing. Talbot cites no authority for the proposition that simply because information is not classified, any disclosure of that information pursuant to a FOIA request is authorized. This is not surprising. For one, the mere fact that information is not classified does not mean that disclosure of that information is automatically authorized. For another, Talbot's argument would vitiate the scope of the National Security Act's protection under Exemption 3: if the disclosure of unclassified information pursuant to a valid FOIA request is necessarily authorized, then any protection accorded by the National Security Act under Exemption 3 would be co-extensive with Exemption 1's protection for classified information.
Finally-and most importantly-the statutory text does not comport with Talbot's interpretation that declassification automatically makes any disclosure authorized. As the Supreme Court has recognized, "Congress [did not] state that only confidential or nonpublic intelligence sources are protected. [The statute] contains no such limiting language." Sims, 471 U.S. at 169, 105 S.Ct. 1881 ; see also Fitzgibbon v. CIA, 911 F.2d 755, 762 (D.C. Cir. 1990) ("[T]he fact that the District Court at one point concluded that certain contacts between CIA and the foreign officials were 'nonsensitive' does not help Fitzgibbon because apparently innocuous information can be protected and withheld."). Ultimately, the question the Court confronts here is whether the information at issue would disclose intelligence methods and sources. See, e.g., Larson v. Dep't of State, 565 F.3d 857, 865 (D.C. Cir. 2009) (the inquiry under Exemption 3 for the National Security Act is "whether the withheld material relates to intelligence sources and *374 methods."). Ms. Shiner's declarations adequately attest that it would. See Decl. of Antoinette B. Shiner ¶¶ 28-33, 37; Suppl. Decl. of Antoinette B. Shiner ¶¶ 16-17.
b. Exemption 6
In addition to the withholdings under Exemption 3, Talbot challenges the withholdings the CIA made under Exemption 6. According to Ms. Shiner, the CIA withheld the "names and personally identifiable information of CIA officers and other individuals found in the responsive records" under Exemption 6. Decl. of Antoinette B. Shiner ¶ 39. She explains that "the release of names and other identifying information would be reasonably likely to subject individuals or those associated with them to increased harassment or threats." Id. Talbot makes the same arguments as to these withholdings as he does to the State Department's Exemption 6 withholdings. See Pl.'s Cross-MSJ at 40. For the reasons discussed above as to the State Department's Exemption 6 withholdings, the Court concludes these withholdings were proper.
C. Segregability
Finally, Talbot challenges the agencies' compliance with the requirement to release any "reasonably segregable portion of a record," 5 U.S.C. § 552(b)(9). Pl.'s Cross-MSJ at 40-42. "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." Sussman v. U.S. Marshals Serv., 494 F.3d 1106, 1117 (D.C. Cir. 2007). Ms. Shiner attests that the CIA conducted a segregability review and released all reasonably segregable records. Decl. of Antoinette B. Shiner ¶ 40. Mr. Rolbin similarly attests that the State Department released all reasonably segregable information. Decl. of Johnathan M. Rolbin ¶¶ 9-12. The burden is on Talbot to proffer contrary evidence to rebut the applicable presumption. See Sussman, 494 F.3d at 1117 (discussing standards to rebut this presumption). He has not done so, and, consequently, his challenge to the CIA's response on this basis fails.
* * *
For the foregoing reasons, the Court will grant in part and deny in part the agencies' motion for summary judgment and deny Talbot's cross-motion. It will grant the agencies summary judgment except as to the State Department's search for passport records under Harvey's pseudonyms and the CIA's search of the operational files. On these two points, the Court will deny both motions without prejudice and require the State Department to conduct a supplemental search and the CIA to either do the same or justify why no such search is needed. A separate Order shall accompany this Memorandum Opinion.

All of the CIA's Exemption 1 withholdings were also made under Exemption 3 in reliance on the National Security Act. See Decl. of Antoinette B. Shiner Ex. L (Vaughn index). Since the Court concludes that those withholdings were proper under Exemption 3, it need not address Exemption 1's applicability.

Coding information is "information that, if connected to other information or placed in the proper context, could reveal the presence of an overseas field installation or the fact that the CIA utilizes a particular cover mechanism." Decl. of Antoinette B. Shiner ¶ 33.