Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued December 5, 2002      Decided July 8, 2003

No. 01-5365

JOHNNY CHUNG,
APPELLANT

v.

U.S. DEPARTMENT OF JUSTICE, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 00cv01912)

*Larry Klayman* argued the cause and filed the briefs for appellant.

*Sharon Swingle*, Attorney, U.S. Department of Justice, argued the cause for appellees. With her on the brief were *Roscoe C. Howard Jr.*, U.S. Attorney, and *Mark B. Stern*, Attorney, Department of Justice. *Dana J. Martin*, Attorney, Department of Justice, entered an appearance.

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

Before: GINSBURG, *Chief Judge*, and ROGERS and TATEL, *Circuit Judges*.

Opinion for the court filed by *Chief Judge* GINSBURG.

GINSBURG, *Chief Judge*: Johnny Chung appeals a judgment dismissing his complaint against the Department of Justice for violation of the Privacy Act, 5 U.S.C. § 552a(b), and against DOJ officials for violation of his constitutional rights. We affirm the dismissal of Chung's constitutional claims because, as the district court correctly held, they are encompassed within the remedial scheme of the Privacy Act. *See Chung v. Dep't of Justice*, No. 00–CV–1912, slip op. at 17–26 (D.D.C. Sept. 20, 2001) (citing *Spagnola v. Mathis*, 859 F.2d 223, 228 (D.C. Cir. 1988) (en banc) (per curiam)). In this opinion, we consider whether a court may, for equitable reasons, toll the two-year limitations period in the Privacy Act. Because we conclude that it may, we vacate in part the judgment of the district court and remand the case for further proceedings.

## I. Background

Chung, a Taiwanese businessman and a favorite of political fundraisers, pleaded guilty in 1998 to making illegal campaign contributions to the Democratic Party. Hoping for a reduced sentence, Chung agreed to cooperate with prosecutors in a broader investigation into violations of the federal election laws by agents of the Chinese government. But Chung's involvement in that supposedly secret probe was stymied by reports in the press. First *The New York Times* revealed that Chung was assisting prosecutors and had fingered a Chinese military man as the source of campaign contributions to the Democrats — a leak that caused the FBI to spirit Chung and his family into hiding. Then *NBC News* reported that Chung was "somewhere in California, worried about retaliation from the Chinese military." Chung claims the leaks prompted the Chinese government to send "hit squads" after him and his family.

Chung filed suit against the Department of Justice and five unnamed "high-ranking DOJ officials," accusing the defen-

dants of leaking the information in the *Times* article and the NBC report. He sought damages under the Privacy Act and under the Constitution of the United States. In the ruling under review, the district court granted the Government's motion to dismiss, finding that Chung's Privacy Act claim was time-barred and that, because the Privacy Act provides a comprehensive remedial scheme for harm caused by governmental disclosure of personal information, it was inappropriate for a court to imply a constitutional remedy for such disclosure under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Chung appeals both aspects of the district court's ruling, but only our resolution of his Privacy Act issue merits treatment in a published opinion.

## II.   Analysis

Section 552a(b) of the Privacy Act, with certain exceptions not relevant here, prohibits a federal agency from releasing information about a person without his consent. 5 U.S.C. § 552a(b). The Act further provides:

> An action to enforce any liability created under this section may be brought . . . within two years from the date on which the cause of action arises, except that where an agency has materially and willfully misrepresented any information required under this section to be disclosed to an individual and the information so misrepresented is material to the establishment of the liability of the agency . . . the action may be brought at any time within two years after discovery . . . of the misrepresentation.

5 U.S.C. § 552a(g)(5).

The parties agree Chung's claim arose in May 1998 when the press reports containing leaked information appeared. Chung did not file his lawsuit until August 2000, a little more than two months after the two-year deadline in the Privacy Act. We must decide whether Chung's failure to meet the statutory filing deadline can (and, if so, should) be excused, as Chung claims, because he could not sue the Government,

without jeopardizing his bid for leniency, until after he was sentenced in December 1998.

### A. Equitable tolling of the Privacy Act limitation

In litigation between private parties, courts have long invoked waiver, estoppel, and equitable tolling to ameliorate the inequities that can arise from strict application of a statute of limitations. *See Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 95 (1990). The applicability of those doctrines in suits against the United States, however, has been complicated by the sovereign immunity of the defendant. At least until 1990, it was not uncommon for a court to deem a time limit for suing the Government "jurisdictional" and hence not subject to judicial malleation. *See, e.g., Action on Smoking & Health v. C.A.B.*, 724 F.2d 211, 225 (D.C. Cir. 1984) ("Courts have consistently held that a statutory time limitation is an integral condition of the sovereign's consent. Compliance with that condition is a prerequisite to jurisdiction"); *Soriano v. United States*, 352 U.S. 270, 276 (1957) ("Congress was entitled to assume that the limitation period it prescribed meant just that period and no more").

Prior to 1990 the Supreme Court had not spoken consistently to the issue — a failing the Court sought to remedy in *Irwin*. That case involved the provision of Title VII of the Civil Rights Act of 1964 that allows an aggrieved employee to file suit "[w]ithin thirty days of receipt of notice of final action taken by . . . the Equal Employment Opportunity Commission." 42 U.S.C. § 2000e–16(c). The Fifth Circuit had found the limitation jurisdictional insofar as it applied to suits against the Government and held that the district court lacked authority to consider the petitioner's equitable claims. 498 U.S. at 93. After noting the tension among its previous holdings, and expressing its dissatisfaction with the "unpredictability" inherent in an "ad hoc" approach, the Court announced a "general rule to govern the applicability of equitable tolling in suits against the Government," namely, that "the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States." *Id.* at 95.

As a guarantor of predictability, the *Irwin* presumption has its shortcomings. The Court reasoned that the Congress, legislating against the backdrop of private litigation, should be presumed to have included equitable tolling as a component of its waiver of sovereign immunity. The question necessarily arises, therefore, whether the Court intended to limit its "general rule" to statutes, such as Title VII, under which both private and governmental parties may be liable. The district court thought so, *Chung*, slip op. at 9, and the Government urges that point upon us here. *See also Becton Dickinson & Co. v. Wolckenhauer*, 215 F.3d 340, 349 (3d Cir. 2000) (" 'making the rule of equitable tolling applicable to suits against the Government, in the same way that it is applicable to private suits' has no meaning in the context of a statute that creates only a cause of action against the government").

We think that too narrow a reading of *Irwin*. Because much litigation against the Government arises under statutes that do not apply to private parties, a rule that excluded such litigation would hardly be a "general rule to govern . . . suits against the Government." Although the Court pointed out that "[t]ime requirements in lawsuits between private litigants are customarily subject to 'equitable tolling,' " 498 U.S. at 95, we do not believe it thereby intended to make the presumption it was announcing contingent upon the presence of a parallel cause of action against a private party in the statute at issue. Rather, we believe the Court meant simply that it is reasonable to presume the Congress, unless it said otherwise, expected the Government to face equitable tolling in litigation because equitable tolling is a traditional feature of the procedural landscape. *Cf. United States v. Texas*, 507 U.S. 529, 534 (1993) (citing "presumption favoring the retention of long-established and familiar principles, except when a statutory purpose to the contrary is evident"). We take the Court at its word when it said it was announcing a "general rule" establishing a presumption in favor of equitable tolling in "suits against the Government," subject to one qualification to which the Court alluded in a subsequent case.

In *United States v. Brockamp*, the Court — before assessing whether the Government had rebutted the presumption in favor of equitable tolling — assumed, "for argument's sake, that a tax refund suit and a private suit for restitution are sufficiently similar to warrant" the presumption in the first place. 519 U.S. 347, 350 (1997). With that assumption, the Court suggested that the type of litigation at issue must not be so peculiarly governmental that there is no basis for assuming customary ground rules apply. The "similarity" inquiry of *Brockamp*, however, must be conducted at a fairly high level of generality if we are not to undermine the Court's goal in *Irwin* of simplifying the equitable tolling issue; the question we ask, therefore, is not whether the elements of, and remedies available in, the action against the Government mimic those of a private claim, but whether the injury to be redressed is of a type familiar to private litigation. *See Brice v. Sec'y of Health & Human Servs.*, 240 F.3d 1367, 1372 (Fed. Cir. 2001) ("a claim under the Vaccine Act is similar to a traditional tort claim in the sense that it seeks monetary recovery from an injury that traditionally was redressed by tort law"). A petition for review of an informal agency rulemaking would not likely meet the test; a claim to recover damages caused by the Government's unwarranted disclosure of personal information does. *See id.; cf.* Restatement (Second) of Torts § 652D (1977) ("Publicity Given to Private Life"). We conclude, therefore, that a Privacy Act claim for unlawful disclosure of personal information is sufficiently similar to a traditional tort claim for invasion of privacy to render the *Irwin* presumption applicable.

Having determined that *Irwin*'s "rebuttable presumption" in favor of equitable tolling applies to this action under the Privacy Act, we turn to the question whether that presumption has been rebutted by the Government. Or, as the Supreme Court phrased the question in *Brockamp*: "Is there good reason to believe that Congress did *not* want the equitable tolling doctrine to apply?" 519 U.S. at 350 (emphasis in original). The Government says yes. It reasons that because the limitations period is by the statute tolled under specified circumstances — when "an agency has materially

and willfully misrepresented any information required under this section to be disclosed," 5 U.S.C. § 552a(g)(5) — the Congress has "already effectively allowed for equitable tolling," *United States v. Beggerly*, 524 U.S. 38, 48 (1998), and should not be presumed to have intended more than it provided.

That there is an express provision in the statute for tolling is, to be sure, a factor that weighs against tolling for any reason not specified in the statute. 524 U.S. at 48. But neither the Supreme Court nor any other court has deemed that negative implication alone sufficient to defeat the presumption established in *Irwin*. In *Brockamp*, the plaintiff's claim was defeated by a combination of factors: the statute's "detail, its technical language, the iteration of the limitations in both procedural and substantive forms, and the explicit listing of exceptions, taken together," as well as the Court's concern that excusing late-filed tax refund claims for equitable reasons "could create serious administrative problems." 519 U.S. at 352. In *Beggerly*, which involved the Quiet Title Act, the Court refused to allow equitable tolling in light of the "special importance" of repose in the area of real property rights. 524 U.S. at 48–49.

The additional factors present in *Brockamp* and *Beggerly* are conspicuously absent from this case. Section 552a(g)(5) is phrased much like an ordinary statute of limitations, not as part of a technical timing scheme with substantive implications. There is no threat of administrative havoc, nor any heightened need for repose. In the absence of those or any other reason for which it would be inconsistent with congressional intent equitably to toll the Privacy Act, we conclude that the Government has not overcome the *Irwin* presumption.*

---

\* In *Griffin v. United States Parole Comm'n*, 192 F.3d 1081, 1082 (D.C. Cir. 1999) (per curiam), the panel stated in its summary disposition that the limitation period in the Privacy Act is "jurisdictional." It did so, however, without considering *Irwin*, and for that reason is overruled. Our resolution of this issue has been approved

B.  Equitable tolling on the facts of this case

Finally, we turn to the question whether Chung has presented a sufficient excuse for his failure to file suit within two years of the time his cause of action arose.  Chung's plea agreement required him to "cooperate fully with federal law enforcement authorities" and granted prosecutors broad discretion to decide whether, in return, to ask the district court to reduce his sentence.  Chung claims that by virtue of that agreement "[h]e was at the mercy of the subjective opinion of the very government agency that violated his rights secured by the Privacy Act."  Upon the assumption that prosecutors would have viewed a lawsuit against the Department of Justice as a failure to "cooperate fully," Chung argues he was "prevented by a superior power" from filing suit until he was sentenced in December 1998.  We review *de novo* the district court's rejection of Chung's argument.  *See United States v. Saro*, 252 F.3d 449, 455 n.9 (D.C. Cir. 2001) ("we employ *de novo* review when a district court holds — as the court appears to have done here — that the facts cannot justify equitable tolling as a matter of law").

In evaluating a claim for equitable relief from a statute of limitations, we must be careful to distinguish between the two primary tolling doctrines.  *See Currier v. Radio Free Europe*, 159 F.3d 1363, 1367 (D.C. Cir. 1999); *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450–52 (7th Cir. 1991).  "Equitable estoppel" precludes a defendant, because of his own inequitable conduct — such as promising not to raise the statute of limitations defense — from invoking the statute of limitations.  *Currier*, 159 F.3d at 1367; *Cada*, 920 F.2d at 450–51.  The doctrine of "equitable tolling," on the other hand, applies most commonly when the plaintiff "despite all due diligence . . . is unable to obtain vital information bearing on the existence of his claim."  *Currier*, 159 F.3d at 1367.  We have previously pointed out that the two doctrines, although functionally similar, "have distinct criteria" — the former revolving around the conduct of the defendant and the latter around

by the entire court and thus constitutes the law of the circuit.  *See Irons v. Diamond*, 670 F.2d 265, 268 n. 11 (D.C. Cir. 1981).

the circumstances of the plaintiff. *Id.* There is a difference in effect as well: Equitable estoppel takes the statute of limitations out of play for as long as is necessary to prevent the defendant from benefitting from his misconduct, whilst equitable tolling — as a method for adjusting the rights of two "innocent parties" — merely ensures that the plaintiff is not, by dint of circumstances beyond his control, deprived of a "reasonable time" in which to file suit. *Cada*, 920 F.2d at 452. *See also Phillips v. Heine*, 984 F.2d 489, 492 (D.C. Cir. 1993) ("The purposes of the doctrine [of equitable tolling] are fully achieved if the court extends the time for filing by a reasonable period after the tolling circumstance is mended").

In this case the district court assumed for the sake of the argument that the limitations period of the Privacy Act was subject to adjustment for equitable reasons but refused to grant relief: First, it believed a plaintiff's fear of retaliation by the defendant could not, as a matter of law, justify equitable relief; second, Chung had not claimed prosecutors "threatened him or took any specific action that prevented him from filing his lawsuit." *Chung*, slip op. at 13.

Whatever the merits of the district court's first ground — and we have our doubts, *see Currier*, 159 F.3d at 1368 ("[A]n employer's affirmatively misleading statements that a grievance will be resolved in the employee's favor can establish an equitable estoppel. . . . [A]n employee understandably would be reluctant to file a complaint with the EEOC for fear he would jeopardize his chances to gain relief voluntarily") (emphasis omitted) — we agree that Chung's failure to allege any specific act or misleading statement by the defendant is problematic. We disagree, however, regarding the extent of the problem. Whereas the district court thought it fatal to Chung's claim, we think it so only insofar as Chung urges equitable estoppel, which, as we have said, is based upon the conduct of the defendant.

But what about equitable tolling? The district court left that ground unplowed, and we are unable to finish the job on the record now before us. One situation in which equitable tolling may apply — when a plaintiff knows he has been

injured, but is unaware that his injury may be the result of possible misconduct by the defendant, *see Cada*, 920 F.2d at 451 — does not seem applicable here. From the press reports containing leaked information, Chung learned simultaneously that his personal information had been disclosed and that the disclosure was attributed to officials familiar with the DOJ investigation. Chung's complaint alleges that, at the same time, his lawyer learned that DOJ officials were responsible for the leaks.

We believe, however, that Chung may be entitled to relief pursuant to the doctrine of equitable tolling if fear that his lawsuit would jeopardize his request for leniency — a fear that seems objectively reasonable in light of the plea agreement and the surrounding circumstances — in fact prevented him from filing suit from May 1998, when his claim arose, until his sentencing in December 1998. If so, then the time remaining in the limitations period — January 1999 to May 2000 — may or may not have been a "reasonable" time within which to file. That will likely depend on the extent, if any, to which Chung's duty to cooperate with the Government interfered with his ability to prepare his claim. *See Cada*, 920 F.2d at 452 (equitable tolling "gives the plaintiff extra time if he needs it. If he doesn't need it, there is no basis for depriving the defendant of the protection of the statute of limitations"). We leave these questions — and the ultimate issue whether Chung suffered delay sufficient to excuse his filing two months late, in August 2000 — to the district court for resolution in the first instance.

## III. Conclusion

For the reasons stated by the district court, we affirm the judgment of that court insofar as it dismissed Chung's constitutional claims. We reverse the judgment with respect to Chung's claim under the Privacy Act, which we remand to the district court for further proceedings consistent with this opinion.

*So ordered.*