ROGERS, Circuit Judge,
concurring in part and dissenting in part:
In holding that the Privacy Act is a comprehensive remedial scheme that precludes creation of a Bivens remedy for any of the Wilsons’ constitutional claims, Op. at 710, the court assigns to the Privacy Act a burden that it was never intended to bear. Aimed at protecting “one of our most fundamental civil liberties — the right to privacy,” [1] the Privacy Act established certain enforceable rights, such as the right to have access to and notice of one’s agency records, to limit the government’s collection of certain information, and to consent to its release. 5 U.S.C. §§ 552a(b)-(f). The Act balanced these individual protections against the government’s legitimate need for information and information systems,[2] but did not eliminate other protections under the Constitution. The issue presented is thus not whether any individual may obtain some relief regarding information that is protected under the Act, but whether the Wilsons are to be afforded an opportunity to obtain relief for alleged constitutional violations against which the Act provides no protection. Nothing in Congress’s decision to limit remedies under the Act to individuals with agency records or to exempt the offices of the President and Vice President shows an intention to deny a cause of action for violations of the First and Fifth Amendments to the Constitution, as the legislative history makes clear, see, e.g., S.Rep. No. 93-1183, at 15 (1974), reprinted in Joint Comm, on Gov’t Operations, 94th Cong., Legislative History OF THE PRIVACY ACT of 1974: SOURCE BooK on Privaoy at 3 (1976). Furthermore, the court’s invocation of other special factors is based on unfounded and premature speculation about a risk of disclosure of secret or sensitive information, Op. at 710. The Wilsons’ claims, as alleged, do not rely on such information but on information already in the public domain, see, e.g., United States v. Libby, 498 F.Supp.2d 1 (D.D.C.2007). The United States has not invoked the state secrets privilege. Besides, district courts are well-situated to protect against unwarranted disclosures, and any concern here about the disclosure of sensitive information in lawsuits against the President’s close ad-visors can be resolved by evidentiary rules and the defense of immunity, which the district court has yet to address.
*714 I.
A brief overview of Bivens precedent reveals how far this court strays. For a plaintiff alleging the violation of a constitutional right by a federal government official, the analysis of whether a court should imply a cause of action under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), involves two primary steps after a determination that a “constitutionally recognized interest” is at stake, Wilkie v. Robbins, — U.S. -, 127 S.Ct. 2588, 2598, 168 L.Ed.2d 389 (2007). First, the court must determine “whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.” Id. When it is “hard to infer that Congress expected the Judiciary to stay its Bivens hand, but equally hard to extract any clear lesson that Bivens ought to spawn a new claim,” id. at 2600 (citing Schweiker v. Chilicky, 487 U.S. 412, 426, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988); Bush v. Lucas, 462 U.S. 367, 388, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983); Bivens, 403 U.S. at 397, 91 S.Ct. 1999), step two of the analysis directs the court to “make the kind of remedial determination that is appropriate for a common-law tribunal, paying particular heed, however, to any special factors coun-selling hesitation before authorizing a new kind of federal litigation,” id. at 2598 (citation and internal quotation marks omitted).
Under step one, the Supreme Court has rejected the notion that state tort law of privacy could adequately protect a victim’s “absolute right” under the Fourth Amendment, Bivens, 403 U.S. at 392, 91 S.Ct. 1999, observing that tort law may be inconsistent or hostile to Fourth Amendment guarantees, id. at 394, 91 S.Ct. 1999, such that it was appropriate to imply a constitutional damages remedy against individual law enforcement officers as “the ordinary remedy for an invasion of personal interests in liberty,” id. at 395, 91 S.Ct. 1999. Similarly, in Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980), the Supreme Court rejected the notion that a damages remedy against the United States pursuant to the Federal Tort Claims Act could sufficiently protect a prisoner’s Eighth Amendment rights as would preclude a damages action against individual prison officials, id. at 23, 100 S.Ct. 1468. In each instance, the Supreme Court implied a Bivens action as “complementary” to an existing remedial scheme. Id. at 20, 100 S.Ct. 1468. Additionally, in Davis v. Passman, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), the Supreme Court held — despite Congress’s exemption of its Members from liability under Title VII of the Civil Rights Act — that the plaintiff had a cause of action under the Fifth Amendment for damages arising from her dismissal from employment by a Congressman on the alleged basis of her gender, because the exemption did not “foreclose the judicial remedies of those expressly unprotected by the statute,” id. at 247, 99 S.Ct. 2264. Recently, the Supreme Court held that federal officials who use their power to retaliate against an individual through criminal prosecution for the exercise of First Amendment rights are “subject to an action for damages on the authority of Bivens,” without discussing any alternative remedies that may exist. Hartman v. Moore, 547 U.S. 250, 256, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006).
Notably, except possibly in a military context,[3] neither the Supreme Court nor *715 this court has denied a Bivens remedy where a plaintiff had no alternative remedy at all. For example in Bush, the Supreme Court stated that there was no need to reach the question whether the absence of any remedy could imply that courts should stay their hands, 462 U.S. at 378 n. 14, 103 S.Ct. 2404, because the plaintiffs claim of retaliatory demotion was addressed by the Civil Service Reform Act, which provided a partial remedy, id. at 386, 103 S.Ct. 2404. Similarly, in Chilicky, 487 U.S. at 421, 108 S.Ct. 2460, because the plaintiffs denial of disability benefits was covered by the Social Security Act, id. at 428, 108 S.Ct. 2460, the Supreme Court determined that “Congress ... ha[d] not failed to provide meaningful safeguards or remedies for the rights of persons situated as [were the plaintiffs],” id. at 425, 108 S.Ct. 2460. In each instance a remedial scheme clearly encompassed the grievance underlying the plaintiffs alleged constitutional violation. So, too, in Correctional Services Corp. v. Malesko, 534 U.S. 61, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001), the Supreme Court did not extend Bivens liability to corporations, a new category of defendant, id. at 68-71, 122 S.Ct. 515, as the plaintiff had not only a Bivens action under the Eighth Amendment against an individual official but also “alternative remedies [that] [were] at least as great, and in many respects greater, than anything that could be had under Bivens,” id. at 72, 122 S.Ct. 515. More recently in Wilkie, 127 S.Ct. at 2600-01, although the patchwork of remedies was not “an elaborate remedial scheme,” id. at 2600 (quoting Bush, 462 U.S. at 388, 103 S.Ct. 2404), sufficient to indicate that “Congress expected the Judiciary to stay its Bivens hand,” id., the Supreme Court denied a Bivens action in part because “[f]or each charge” the plaintiff “had some procedure to defend and make good on his position,” including “the means to be heard,” id. at 2599, through “an administrative, and ultimately a judicial, process for vindicating virtually all of his complaints,” id. at 2600; see also id. at 2604.
Consistent with this precedent, where nothing “suggests that Congress intended to prevent [suits] ... for constitutional violations against which [the statute] provides no protection at all,” even where the statute provided remedies for other employment-based injuries, this court has entertained a Bivens remedy. Ethnic Employees of Library of Cong. v. Boorstin, 751 F.2d 1405, 1415 (D.C.Cir.1985). Even when denying a Bivens remedy in Spagnola v. Mathis, 859 F.2d 223 (D.C.Cir.1988); see Op. at 706, 709, the en banc court emphasized that although the plaintiffs’ claims did not receive the full protection under the Civil Service Reform Act, there could be “little doubt” that “Congress ha[d] brought [the plaintiffs’] claims ... within [the statute’s] ambit” as it “affirmatively sp[oke] to claims such as [the plaintiffs’]” and “technically aecommodate[d] [their] constitutional challenges,” id. at 229.
Under step two, the Supreme Court has described the type of “special factors coun-selling hesitation.” Wilkie, 127 S.Ct. at *716 2598 (citation and internal quotation marks omitted). Where the Constitution itself vests unique responsibility in Congress for the military, see Stanley, 483 U.S. at 681-84, 107 S.Ct. 3054, or where a constitutional claim depends upon a government-created interest such as federal employment, benefits, or the availability of government information as in FOIA, the Supreme Court has considered whether “Congress is in a better position to decide” whether to create a particular damages remedy, Chilicky, 487 U.S. at 427, 108 S.Ct. 2460 (quoting Bush, 462 U.S. at 390, 103 S.Ct. 2404); Bivens, 403 U.S. at 396-97, 91 S.Ct. 1999; see Thomas v. Principi, 394 F.3d 970, 975-76 (D.C.Cir.2005); Johnson v. Exec. Ofc. for U.S. Attys., 310 F.3d 771, 777 (D.C.Cir.2002); Spagnola, 859 F.2d at 226-28. The Supreme Court also has considered the judicial manageability of “devising a workable cause of action,” Wilkie, 127 S.Ct. at 2604; see Davis, 442 U.S. at 245, 99 S.Ct. 2264.
II.
Applying the Bivens analysis demonstrates that reversal is required for Mr. Wilson’s claims against all appellees and for one of Ms. Wilson’s claims against three of the appellees.
A.
Mr. Wilson alleges that, in violation of the First Amendment, appellees intentionally retaliated against him for his constitutionally protected statements about the President’s State of the Union Address by disclosing to various members of the press his wife’s identity as an undercover agent with the Central Intelligence Agency (“CIA”), and thereby harming him and his family. Am. Compl. ¶¶ 19-49. In addition, he alleges that, in violation of the Fifth Amendment’s equal protection requirement, appellees intentionally targeted him for unfavorable treatment different from those similarly situated without a legitimate basis. Id. ¶¶ 50-54.
At step one, the Privacy Act is not an alternative remedial scheme for Mr. Wilson’s constitutional claims because he has no cause of action under the Act, see Sussman v. U.S. Marshals Serv., 494 F.3d 1106, 1123 (D.C.Cir.2007), but even assuming he could somehow obtain relief through his wife’s Privacy Act claim as the court suggests, Op. at 707-08, 709, the statute would provide none for the harm allegedly caused by three appellees not employed by an “agency.” First, the Act creates a civil damages remedy “[w]henever any agency ... fails to comply with any other provision of this section ... in such a way as to have an adverse effect on an individual,” 5 U.S.C. § 552a(g)(l)(D) (emphasis added), such as by violating the prohibition on the disclosure of an individual’s “record which is contained in a system of records,” id. § 552a(b). These provisions do not cover Mr. Wilson’s claims due to the disclosure of information about his wife that is retrievable from agency records under her name, because the term “adverse effect” includes “only ... a person whose records are actually disclosed.” Sussman, 494 F.3d at 1123; 5 U.S.C. § 552a(4). Thus, the Privacy Act suggests nothing about the legal rights of an individual without an agency record who is harmed through the disclosure of someone else’s agency record, i.e., someone “expressly unprotected” by the statute, Davis, 442 U.S. at 247, 99 S.Ct. 2264; see Ethnic Employees, 751 F.2d at 1415. The Act neither “affirmatively speaks to” nor “accommodates ... [the] constitutional challenges,” Spagnola, 859 F.2d at 229, brought by Mr. Wilson. See also Dunbar Corp. v. Lindsey, 905 F.2d 754, 762 (4th Cir.1990).
*717 The court’s conclusion, therefore, that “[t]he presence of a comprehensive remedial scheme is ... a sufficient reason for us to stay our hand” on Bivens, Op. at 709, is, at best, incomplete. A statutory scheme may be insufficient when it is comprehensive for some claims but not for others or for the plaintiff alleging a harm that the statute does not purport to address. When a statute omits remedies for government officials’ harm, its mere existence is an unconvincing reason to deny a Bivens remedy, as was the Civil Rights Act in Davis, 442 U.S. at 247, 99 S.Ct. 2264, and the Federal Tort Claims Act in Carlson, 446 U.S. at 23, 100 S.Ct. 1468. See also Wilkie, 127 S.Ct. at 2600 (quoting Davis, 442 U.S. at 245, 99 S.Ct. 2264 (quoting Bivens, at 410, 91 S.Ct. 1999 (Harlan, J., concurring in judgment))). An exception would occur where “the design [of the statute] ... suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations,” Chilicky, 487 U.S. at 423, 108 S.Ct. 2460. Bivens embraces the notion that a constitutional claim and a statutory claim may be complementary, see Carlson, 446 U.S. at 20, 100 S.Ct. 1468; see also Bagola v. Kindt, 131 F.3d 632, 642-44 (7th Cir.1997). But an omission in the statute can mean that Congress either decided not to provide a damages remedy or did not contemplate much less decide “ ‘what it considers adequate remedial mechanisms for constitutional violations that may occur,’ ” Op. at 10 (quoting Chilicky, 487 U.S. at 423, 108 S.Ct. 2460), in a certain way or to a certain class of individuals. In sum, the comprehensiveness of a statute for some plaintiffs begs the key question of whether Congress has “not inadvertently omitted damages remedies for certain claimants,” Spagnola, 859 F.2d at 228 (citation and internal quotation marks omitted); see Wilkie, 127 S.Ct. at 2598.
Second, in suggesting that Mr. Wilson could obtain some relief through his wife’s potential claim under the Privacy Act, Op. at 707-08, 709, and thus that it is a comprehensive remedial scheme as to him, the court appears to assume that a statutory exemption of certain offices must mean that Congress has not inadvertently denied a remedy, id. at 707-08, 709-10. But such an approach glosses over the question whether the Privacy Act in this case “amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages,” Wilkie, 127 S.Ct. at 2598. In four instances involving a congressional exemption of a category of defendant, the Supreme Court has proceeded to analyze whether it would be appropriate to imply a Bivens action. See Malesko, 534 U.S. at 70-74, 122 S.Ct. 515; FDIC v. Meyer, 510 U.S. 471, 484-86, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994); Carlson, 446 U.S. at 19-23, 100 S.Ct. 1468; id. at 28, 100 S.Ct. 1468 (Powell, J., concurring in judgment); Davis, 442 U.S. at 245-48, 99 S.Ct. 2264. For example, although Congress had exempted its Members from liability under Title VII of the Civil Rights Act, the Supreme Court concluded in Davis that this did not demonstrate Congress’s intention to deny a Bivens remedy. See 442 U.S. at 247, 99 S.Ct. 2264. Acknowledging that a suit against a Member of Congress “for putatively unconstitutional actions taken in the course of his official conduct [did] raise special concerns,” id. at 246, 99 S.Ct. 2264, the Supreme Court concluded that “these concerns [were] coextensive with the protections afforded by the Speech or Debate Clause,” id., and left to the lower court to determine in the first instance whether the defendant’s conduct was shielded by immunity, id. at 249, 99 S.Ct. 2264., 99 S.Ct. 2264 In so doing, the Supreme Court observed that “[o]ur system of jurisprudence rests on the assumption that all *718 individuals, whatever their position in government, are subject to federal law.” Id. at 246, 99 S.Ct. 2264 (quoting Butz v. Economou, 438 U.S. 478, 506, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) (quoting United States v. Lee, 106 U.S. 196, 220, 1 S.Ct. 240, 27 L.Ed. 171 (1882))).
In the Privacy Act, 5 U.S.C. § 552a(a)(l), Congress adopted the definition of “agency” in the Freedom of Information Act (“FOIA”), id. § 552(f), without explanation. The legislative history of FOIA, see Op. at 708, makes clear that the exemption of the President and his close advisors[4] was simply designed to avoid a challenge that Congress lacked authority to force disclosure of the President’s papers and communications with close advis-ors. See H.R.Rep. No. 93-1380 at 15 (1974) (Conf.Rep.), reprinted in H. Comm, on Gov’t OpeRations, S. Comm, on the JudiciaRY, 94th Cong., Freedom op Information Act and Amendments of 1974, Source Boor II, at 231-32 (1975); Soucie v. David, 448 F.2d 1067, 1071-72 & nn. 9-12 (D.C.Cir.1971).[5] This is a far cry from indicating that Congress considered and decided to deny a Bivens remedy in the context at issue. The myriad procedural duties imposed on an “agency” by FOIA and the Privacy Act, see, e.g., 5 U.S.C. §§ 552(a), (e), (g), (i)-(i); id. §§ 552a(b)-(f), reveal that the considerations relevant to the exemption of an office, see, e.g., Meyer, 981 F.2d at 1291-93, are different from those relevant to whether a cause of action should be created for an individual who alleges First and Fifth Amendment violations by employees of the exempted offices.
In any event, the legislative history demonstrates that the Privacy Act was designed to add protection, not to eliminate existing remedies or those that might be developed by the courts. See, e.g., S.Rep. No. 93-1183, at 2-3, 16, Source Boox ON Privacy at 155-56, 169; H.R.Rep. No. 93-1416 at 3 (1974), Source Book on Privacy at 296; 120 Cong. Rec. 40,410 (1974) (statement of Sen. Muskie). Most significantly, the Senate Report states that the Privacy Act “should not be construed as a final statement by Congress on the right of privacy and other related rights as they may be developed or interpreted by the courts.” S.Rep. No. 93-1183, at 15, Source Book on Privaoy at 168 (emphasis added). The legislative history satisfies any “clear expression” requirement, see Spagnola, 859 F.2d at 229 (citing Chilicky, 487 U.S. at 423, 108 S.Ct. 2460), as it makes manifest that Congress did not in *719 tend the Privacy Act to be a final or exclusive remedy but contemplated a continuing role for the courts. The court therefore errs in treating Congress’s decision to exempt certain Executive offices from the Privacy Act as a “convincing” reason to refrain from implying a Bivens remedy, Wilkie, 127 S.Ct. at 2598.
To the extent the court relies on Chung v. Dep’t of Justice, 333 F.3d 273, 274 (D.C.Cir.2003), for the proposition that the Privacy Act is a per se comprehensive statute for Bivens purposes, Op. at 702-03, 706, its reliance is misplaced. Chung does not apply because Mr. Wilson has no cause of action or remedy against any appellee under the Act. In Chung, the plaintiff alleged the violation of his First and Fifth Amendment rights by agency officials (unnamed defendants) and pled a Privacy Act claim against their employer agency when his investigative cooperation was leaked. See Chung v. Dep’t of Justice, No. Civ. 00-1912, 2001 WL 34360430, at *1-2 (D.D.C.2001). This court affirmed the dismissal of his constitutional claims, adopting the district court’s view that they were “encompassed within the remedial scheme of the Privacy Act,” 333 F.3d at 274. This court provided no independent analysis, and the district court’s holding that the Privacy Act was comprehensive because the plaintiffs claims stemmed from an agency disclosure of his records, 2001 WL 34360430, at *12, was limited to a circumstance where the plaintiff, unlike Mr. Wilson, had a cause of action under the Act. Neither this court nor the district court addressed the legislative history discussed above. The other case cited by the court, Op. at 706; see Downie v. City of Middleburg Heights, 301 F.3d 688, 699 (6th Cir.2002), also involved plaintiffs who had “a meaningful remedy” under the Privacy Act.
In sum, where courts have declined to imply a Bivens remedy notwithstanding omission of a damages remedy or exemption of a defendant category, there was an indication that Congress had considered “the rights of persons situated as [were the plaintiffs],” Chilicky, 487 U.S. at 425, 108 S.Ct. 2460; see Malesko, 534 U.S. at 72, 122 S.Ct. 515; Spagnola, 859 F.2d at 229. No evidence here suggests that Congress meant the Privacy Act “to foreclose alternative remedies available to those not covered by the statute,” Davis, 442 U.S. at 247, 99 S.Ct. 2264. As our sister circuit has observed, where it “seems plain ... that Congress never has given a moment’s thought to the question of what sort of remedies should be available,” Krueger v. Lyng, 927 F.2d 1050, 1057 (8th Cir.1991), to an injured plaintiff such as Mr. Wilson, “Congress’s failure to provide a remedy for constitutional wrongs suffered by [such a plaintiff] has been inadvertent” and the plaintiff “may proceed with his Bivens action.” See also Bagola, 131 F.3d at 642; Dunbar Corp., 905 F.2d at 762; Ethnic Employees, 751 F.2d at 1415. Given the text of the Privacy Act and the evidence of congressional intent, it is incongruous to apply a statute designed to protect the privacy of an individual’s agency records to preclude eongressionally unforeseen constitutional claims by a stranger to the Act, see Sussman, 494 F.3d at 1123. Because Mr. Wilson is a person for whom Congress has “inadvertently omitted damages remedies,” Spagnola, 859 F.2d at 228 (citation and internal quotation marks omitted), the Privacy Act is not a comprehensive remedial scheme as to him and implying a Bivens action for his claims would comport with precedent. See Wilkie, 127 S.Ct. at 2600; Malesko, 534 U.S. at 73-74, 122 S.Ct. 515; Davis, 442 U.S. at 245, 99 S.Ct. 2264; Bivens, 403 U.S. at 410, 91 S.Ct. 1999 (Harlan, J., concurring in judgment); Ethnic Employees, 751 F.2d at 1414-15; *720 see also Munsell v. Dep’t of Agric., 509 F.3d 572, 591 (D.C.Cir.2007). To avoid this result, the court lumps the Wilsons’ claims together, describing Mr. Wilson’s claims as seeking damages for unconstitutional action taken in regard to information that once was covered by the Privacy Act. Op. at 707-08, 709. But the Constitution protects individual rights, not information, and whether Ms. Wilson might have a Privacy Act remedy is irrelevant to Mr. Wilson’s independent claims based on public disclosures that were steps removed from internal government transfers, see, e.g., 5 U.S.C. § 552a(b). The days when husband and wife were considered as one at law are long past. See, e.g., Rousey v. Rousey, 528 A.2d 416, 417 & n. 1 (D.C.1987) (en banc).
At step two, the court acknowledges that neither the Intelligence Identities Protection Act of 1982 (“UPA”), 50 U.S.C. §§ 421-26, which imposes criminal penalties for intentional disclosure of a covert agent’s identity to an unauthorized source in certain circumstances, nor the Totten doctrine,[6] which bars litigation of a claim involving an unacknowledged CIA agent’s employment, applies. Op. at 710. That is, because the IIPA provides no civil remedies it is irrelevant to assessing whether Congress has created a comprehensive remedial scheme that it deems an adequate alternative to suits directly under the Constitution. Rather, a Bivens action would supplement the criminal scheme by imposing civil damages. And because the United States has acknowledged Ms. Wilson’s prior covert CIA identity, there is no Tot-ten problem. The court nonetheless, in a novel analysis, extends the disclosure concerns underlying the IIPA and the Totten doctrine, treating them as “valid considerations” weighing against implying a Bivens remedy, id. at 710, even though all of the cases the court cites are inapposite. The cat is out of the bag as Ms. Wilson’s cover has already been compromised, see Tenet, 544 U.S. at 10, 125 S.Ct. 1230, and these claims, as pled, do not depend upon the “forced disclosure of the identities of [the CIA’s] intelligence sources,” CIA v. Sims, 471 U.S. 159, 175, 105 S.Ct. 1881, 85 L.Ed.2d 173 (1985). Besides, courts regularly entertain cases involving CIA agents, confidential information, and even matters relating to national security. See, e.g., Tenet, 544 U.S. at 10, 125 S.Ct. 1230; Webster v. Doe, 486 U.S. 592, 604, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988); In re Sealed Case, 494 F.3d 139 (D.C.Cir.2007).
Likewise, the court’s speculation that this litigation “would inevitably require judicial intrusion into matters of national security and sensitive intelligence information,” Op. at 18, is unfounded and at best premature. It is unfounded because any concern about possible disclosure of secret or sensitive information has not prompted the United States to assert the state secrets privilege, see United States v. Reynolds, 345 U.S. 1, 7-8, 73 S.Ct. 528, 97 L.Ed. 727 (1953); In re Sealed Case, 494 F.3d at 142. At this stage of the proceedings this is hardly surprising inasmuch as the United States successfully prosecuted related obstruction-of-justice, perjury, and false-statements charges to a jury verdict, see Libby, 498 F.Supp.2d at 2; see also Am. Compl. ¶¶ 20-22, 33-34. In any event, district courts are well-suited to protect secrets from unwarranted disclosures. See, e.g., Boumediene v. Bush, — U.S. -, 128 S.Ct. 2229, 2276, 171 L.Ed.2d 41 (2008); Webster, 486 U.S. at 604, 108 S.Ct. *721 2047; In re Sealed Case, 494 F.3d at 153. It is premature because “[tjhere has been neither discovery nor any presentation to the district court of how [the Wilsons] will try to prove their claims.” Appellants’ Reply Br. at 2. As alleged, the claims depend upon the intent and effect of appel-lees’ exposure of Ms. Wilson’s covert identity to the press, relying on information already in the public domain. Concern regarding the disclosure of sensitive information in lawsuits against close Presidential advisors can be resolved under eviden-tiary rules, see, e.g., In re Sealed Case, 494 F.3d 139, and the defense of immunity. As to the latter, the Supreme Court has instructed that “[t]he danger that high federal officials will disregard constitutional rights in their zeal to protect the national security is sufficiently real to counsel against affording [these] officials [such as the Attorney General] an absolute immunity,” Mitchell v. Forsyth, 472 U.S. 511, 523, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), and so immunity questions should be addressed on their own merit rather than imported into the Bivens analysis. Hence, the court’s disclosure concerns cannot serve as a special factor to “modify litigants’ substantive rights as to either constitutional or statutory matters,” In re Sealed Case, 494 F.3d at 143. Neither can the court’s broad holding rely, Op. at 706, 709, on the limited concession that the Privacy Act is a special factor for Ms. Wilson’s privacy claim against former Deputy Secretary of State Armitage, see Appellants’ Br. at 18 n. 3.
For these reasons the underlying rationale of Bivens and its progeny — “ ‘[t]he very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury,’ ” Bivens, 403 U.S. at 397, 91 S.Ct. 1999 (quoting Marbury v. Madison, 5 U.S. (1 Crunch) 137, 163, 2 L.Ed. 60 (1803)), unless Congress has acted to the contrary in a “convincing” way or there are “special factors counselling hesitation,” Wilkie, 127 S.Ct. at 2598 — instructs that the dismissal of Mr. Wilson’s constitutional claims was erroneous. He has no alternative remedy and no special factors counsel caution against creating a cause of action for him. There is nothing novel about a Bivens remedy for a First Amendment retaliation claim against federal officials. See, e.g., Hartman, 547 U.S. at 256, 126 S.Ct. 1695; Nat’l Commodity & Barter Ass’n v. Gibbs, 886 F.2d 1240, 1248 (10th Cir.1989); Gibson v. United States, 781 F.2d 1334, 1342 (9th Cir.1986); Ethnic Employees, 751 F.2d at 1415; Dellums v. Powell, 566 F.2d 167, 194-95 (D.C.Cir.1977). A claim of denial of equal protection for a class of one has long been recognized, see 3883 Conn. LLC v. Dist. of Columbia, 336 F.3d 1068, 1075 (D.C.Cir.2003) (citing Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000)), and the Supreme Court’s recent decision in Engquist v. Oregon Department of Agriculture, — U.S. -, 128 S.Ct. 2146, 170 L.Ed.2d 975 (2008), does not affect Mr. Wilson as he was not a public employee when the alleged constitutional violations occurred. Mr. Wilson’s claims, then, are the type for which Bivens contemplated a compensatory cause of action to deter government officials’ violations of the Constitution, see Malesko, 534 U.S. at 70-71, 74, 122 S.Ct. 515; FDIC, 510 U.S. at 485, 114 S.Ct. 996; Carlson, 446 U.S. at 21-22, 100 S.Ct. 1468; Bivens, 403 U.S. at 395-96, 91 S.Ct. 1999; id. at 403, 408, 91 S.Ct. 1999 (Harlan, J., concurring in judgment); see also Wilkie, 127 S.Ct. at 2600; Hartman, 547 U.S. at 256, 126 S.Ct. 1695, and which the Privacy Act did not foreclose, see, e.g., S.Rep. No. 93-1183, at 15, Souroe Book ON Peivacy at 168.
*722 B.
Ms. Wilson alleges that in disclosing her covert identity appellees violated her Fifth Amendment rights to equal protection, privacy, and property. Am. Compl. ¶¶ 50-64.
For the claims that are inseparable from her public employment, Ms. Wilson has no “constitutionally recognized interest” at stake, Wilkie, 127 S.Ct. at 2598; see Davis, 442 U.S. at 236-38, 99 S.Ct. 2264; see also Dunbar Corp., 905 F.2d at 759. Under Engquist, because of the “unique considerations applicable when the government acts as employer as opposed to sovereign, ... the class-of-one theory of equal protection does not apply in the public employment context,” 128 S.Ct. at 2151. She also has no due process protection for a nonexistent property interest in her continued CIA employment. See Doe v. Gates, 981 F.2d 1316, 1320-21 (D.C.Cir.1993); cf. Doe v. Cheney, 885 F.2d 898, 909 (D.C.Cir.1989).
However, the district court acknowledged that Ms. Wilson alleges a violation of a constitutional right to privacy under the Due Process Clause where public disclosure of information constituted a state-created danger, see Butera v. Dist. of Columbia, 235 F.3d 637, 651-52 (D.C.Cir.2001); Kallstrom v. City of Columbus, 136 F.3d 1055, 1064 (6th Cir.1998); Am. Compl. ¶¶1, 21, 40-42, 55-58; cf. Am. Fed. of Gov’t Employees, AFL-CIO v. Dep’t of Housing & Urban Devel., 118 F.3d 786, 791-93 (D.C.Cir.1997).[7] In view of the design of the Privacy Act and Congress’s intention in enacting it, and the absence of special factors counselling against a Bivens remedy, see supra Part II.A, I would remand this claim to the district court, except as to appellee Armi-tage for whose disclosure Ms. Wilson has a potential cause of action under the Privacy Act, 5 U.S.C. § 552a(g)(l), against his former agency, see Ethnic Employees, 751 F.2d at 1415. Except as to this appellee Chung is not dispositive, 333 F.3d at 274, for although Ms. Wilson’s records are protected in some respects under the Privacy Act, three of the appellees are not covered by the Act and, as the legislative history shows, the exemption of the offices in which they work was unrelated to and reveals no consideration of the type of harm on which her endangerment claim is based. The Privacy Act thus cannot be said to adequately protect her constitutional privacy interest or to reveal a congressional intent to bar this set of claims.
In conclusion, the court’s decision is not the product of the application of the Bivens doctrine to appellants’ claims as Wilkie directs, 127 S.Ct. at 2598. It is rather the result of the refusal to acknowledge precedent that Bivens is a remedial doctrine and absent special factors applies where Congress created statutory protection for some persons in some circumstances but did not address the type of constitutional claims alleged by Mr. Wilson and in part by Ms. Wilson. The disclosure concerns identified by the court as counsel-ling hesitation are either unfounded or premature because there has been no discovery or presentation by the Wilsons to the district court of how they will attempt to prove their claims. Contrary to separation of powers, then, the court effectively cedes to Congress the judiciary’s defined role to decide issues arising under the Constitution, despite the fact that the Privacy Act neither is nor purports to be a universal bar to all constitutional relief related to the release of agency records. *723 Accordingly, I concur in Parts II and III.B of the court’s opinion, and in the judgment regarding Ms. Wilson’s equal protection and due process property claims, but I respectfully dissent from the affirmance of the dismissal of Mr. Wilson’s First and Fifth Amendment claims against each ap-pellee and Ms. Wilson’s due process state-endangerment claims (except against ap-pellee Armitage), and would leave to the district court to address in the first instance appellees’ defenses of immunity, see, e.g., Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); Davis, 442 U.S. at 249, 99 S.Ct. 2264; Butera, 235 F.3d at 646.

. 120 Cong. Rec. 12,646 (1974) (statement of Sen. Ervin).

. H.R.Rep. No. 93-1416, at 4 (1974), reprinted in Joint Comm, on Gov’t Operations, 94th Cong., Legislative History of the Privacy Act of 1974: Source Book on Privacy at 297 (1976).

. Under step two of the Bivens analysis, the Supreme Court concluded in view of the "specificity” and "insistence” of the "explicit constitutional authorization for Congress '[t]o *715 make Rules for the Government and Regulation of the land and naval Forces,’ U.S. Const., Art. I, § 8, cl. 14," United States v. Stanley, 483 U.S. 669, 681-82, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987), and "the unique disciplinary structure of the Military Establishment and Congress' activity in the field” regarding the military justice system, id. at 683, 107 S.Ct. 3054 (quoting Chappell v. Wallace, 462 U.S. 296, 304, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983)), that it would be inappropriate to provide a Bivens action against a military official for injuries incident to military service, even though the plaintiff appeared to have no statutory remedy, id. at 683-84, 107 S.Ct. 3054 (citing Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950)).

. In Kissinger v. Reporters Committee for Freedom of the Press, 445 U.S. 136, 100 S.Ct. 960, 63 L.Ed.2d 267 (1980), the Supreme Court held that the Office of the President is not an "agency,” id. at 156, 100 S.Ct. 960 (citing H.R.Rep. No. 93-1380, at 15 (1974) (Conf. Rep.)). In Schwarz v. U.S. Department of Treasury, No. 00-5453, 2001 WL 674636, at *1 (D.C.Cir. May 10, 2001), this court summarily affirmed the district court’s holding that the Vice President’s office is not an "agency,” see Schwarz v. U.S. Dep’t of Treas., 131 F.Supp.2d 142, 147-48 (D.D.C.2000); see also Op. at 707-08, although the Vice President's participation in an Executive Branch entity does not automatically exempt it from the definition, see. Meyer v. Bush, 981 F.2d 1288, 1295 n. 7 (D.C.Cir.1993).

. The Conference Report accompanying the 1974 Amendments to FOIA stated:
With respect to the meaning of the term "Executive Office of the President” [in 5 U.S.C. § 552(f) ] the conferees intend the result reached in Soucie v. David, 448 F.2d 1067 (C.A.D.C.1971). The term is not to be interpreted as including the President’s immediate personal staff or units in the Executive Office whose sole function is to advise and assist the President.
H.R.Rep. No. 93-1380, at 15, FOIA Source Book II at 232; see Meyer, 981 F.2d at 1292 & n. 1.

. Totten v. United States, 92 U.S. 105, 23 L.Ed. 605 (1875); see Tenet v. Doe, 544 U.S. 1, 8, 125 S.Ct. 1230, 161 L.Ed.2d 82 (2005).

. See generally Totten, 92 U.S. at 106; Haig v. Agee, 453 U.S. 280, 285 & n. 7, 101 S.Ct. 2766, 69 L.Ed.2d 640 (1981).